## L. E. Cohn, trading as Tobacco Products Company, Plaintiff in Error, v. Mechanics & Traders Insurance Company, Defendant in Error.

### Gen. No. 17,590.

1. INSURANCE—*method of cancelling policy.* A fire insurance policy providing that it may be canceled at any time at the request of the insured or by the company by giving five days' notice, may be canceled by the insured or by the company as provided by the policy, or by agreement of the parties.

2. INSURANCE—*insufficient evidence of cancellation of policy.* Where a broker notifies an insured that his fire insurance policies are to be canceled and the insured declines to surrender them, stating that he will take advantage of a clause requiring five days' notice, and testifies that after a fire he informed a fire patrolman only that he had received notice the policies would be canceled, evidence by the patrolman that the insured had informed him that the policies had been canceled is not sufficient to establish such fact.

3. INSURANCE—*when failure to pay premium will not defeat recovery.* If credit for a premium on a fire insurance policy is given by an agent of the insured, the mere failure to pay the premium does not defeat a right to recover on the policy.

Error to the Municipal Court of Chicago; the Hon. ROBERT H. SCOTT, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Reversed and remanded. Opinion filed December 17, 1912.

LIPSON & LEVY, for plaintiff in error.

CHARLES B. OBERMEYER, for defendant in error.

MR. PRESIDING JUSTICE CLARK delivered the opinion of the court.

This case, which was an action brought by the plaintiff against the defendant upon a fire insurance policy, was tried before the court and a jury, resulting in a verdict and judgment for defendant.

The plaintiff had in his possession at the time of the fire, insurance policies made by fourteen insurance

companies, the policies aggregating $17,500. One of these policies was issued by the defendant for $1,000 in amount, and another by the North British & Mercantile Insurance Company for $1,500. The latter policy is the subject of a suit pending on an appeal in this court, general number 17848 (Cohn v. North British and Mercantile Insurance Co., *post,* p. 612). The latter case was heard by the court without a jury, and a finding was made in favor of the plaintiff. The two cases have been submitted upon the same briefs and printed and oral arguments. The evidence taken before the jury and court in the case now under consideration was by stipulation submitted to the trial court in the second case, with additional proof as to the issuance of the policy involved in that case, etc.

It appears that on February 9, 1910, policies aggregating $12,500 had been issued, $7,500 in amount having been obtained from Martin & Co., brokers, and $5,000 from a broker named Alexander. This was in addition, as we understand the record, to a policy of $2,500 upon fixtures. The policies obtained through Alexander were issued by Fred S. James & Co., as agents, and included the two policies involved in the cases now under consideration. On February 10th Alexander called at plaintiff's store and stated to plaintiff in substance, as plaintiff testified, that he had received a letter from the "James people" and that they were going to cancel the policies and had requested him to get them. Plaintiff refused to surrender the policies, stating that he had five days' time, evidently referring to the provisions of the policies whereby the insurance companies had the right to cancel them by giving five days' notice. The plaintiff told Alexander to get new policies, and the broker replied that he would be back in five days with other policies to replace the old ones. Alexander did not bring the new policies. Plaintiff testified that thereafter he discussed the matter with his brother, and that as he claimed the stock to be worth $18,000 they

decided that additional insurance should be procured. Thereupon the brother ordered through Martin & Co. additional policies aggregating $5,000. On February 11th the fire occurred. The Martin policies had not been delivered but had been issued. On adjustment it was found that the value of the stock was $17,376.47, and the loss by fire $13,390.99. It is admitted of record that all of the companies excepting the two whose policies are involved in the present proceedings paid their proportion of the loss on the assumption that the so-called James policies were valid, subsisting insurance which should contribute. It is further stipulated that the proportion payable by the Mechanics and Traders Insurance Company, if it is liable, is $765.20 and that of the North British and Mercantile Insurance Company $1,147.80.

The contention on behalf of the two insurance companies is that there was an agreement to cancel the policies. The testimony respecting this matter seems to be confined to that of James Wolf, a policeman of the fire attorney's office of the City of Chicago, who testified that the morning after the fire the plaintiff told him that he had $15,000 of insurance; that he mentioned the names of the agents who placed it for him, namely, Martin and Alexander; that he asked the plaintiff how it came that he got the increased insurance, and whether he had increased his stock proportionately at the time; that the plaintiff said "no," and proceeded to explain that there was $5,000 canceled by Alexander, and that he had called up Martin and told him to place $5,000 to take the place of the insurance that Alexander canceled. With respect to this matter the plaintiff testified that he did not say to Wolf that the insurance had been canceled but that he had received notice that they were going to cancel it; that he had always carried $15,000 and that he had ordered $5,000 more from Martin the day before, and that James & Co. had notified him that they were going to cancel policies aggregating $5,000.

The provision of both policies as to cancellation is as follows: "This policy shall be canceled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation." Provision is then made as to the return of a portion of the premium if canceled by the insured, and the retaining of a *pro rata* amount if canceled by the company.

We agree with counsel for the insurance companies that there are three ways in which policies like those we are considering may be canceled: First, by an exercise of that right on the part of the insured, as therein provided; second, by action of the insurance company in giving the requisite five days' notice; third, by agreement of the parties. In the cases before us, if there were a cancellation in legal contemplation, it was because the same was agreed to. We do not think the testimony of the policeman sufficient to show such an agreement to the cancellation. The policies were not formally canceled. On the other hand the evidence is undisputed that the plaintiff refused to surrender them until others should be received in their place. Alexander was a mere broker, and there is nothing in the record pointing to the conclusion that he was authorized as agent for the plaintiff to consent to a cancellation, or that in effect he did consent on behalf of the insured to such cancellation.

We think the facts in this case distinguish it clearly from the cases referred to in the briefs filed on behalf of the insurance companies. Home Ins. Co. of New York v. Chattahoochee Lumber Co., 126 Ga. 334; Arnfeld v. Guardian Assurance Co., 172 Pa. St. 605; Larsen v. Thuringia Amer. Ins. Co., 208 Ill. 166. Our attention has been called to two recent decisions which we regard as authority for the position taken in the case; Scheel v. German American Ins. Co., 228 Pa. St. 44, and Northern Pine Crating Co. v. Liverpool & L. & G. Ins. Co., 143 Wis. 433.

It is true that the insurance premium was not paid, or offered to be paid, until after the loss; but it is the

settled law of this state that if credit is given by an agent of the insured, the mere failure to pay the premium does not defeat the right to recover on the policy. Firemen's Ins. Co. v. Kuessner, 164 Ill. 275.

At the close of the testimony the plaintiff submitted an instruction to the court to the effect that the verdict of the jury should be for the plaintiff. After a careful examination of the record we are satisfied that this instruction should have been given. It therefore becomes unnecessary to consider other questions raised in the case.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*