Harty *v.* Standard Accident Insurance Company,
Appellant.

Argued November 14, 1958.   Before JONES, C. J.,
BELL, MUSMANNO, JONES, COHEN and BOK, JJ.

*Glenn A. Troutman,* with him *McWilliams, Wagoner & Troutman,* for appellant.

*Herman Lang Sundheim,* with him *Elias Magil,* for appellee.

OPINION BY MR. JUSTICE BOK, January 5, 1959:

The question before us is whether or not there was a substitution of one insurance policy for another.

There was an effort to issue group health and accident insurance to the Pennsylvania Realtors Association, but they were held by the Attorney General not to be professional persons and the policies were therefore issued to them individually.

Plaintiff's husband received his policy in 1948 and by successive renewals maintained it until March 31, 1954. This policy contained a thirty-one days' grace period and required sixty days' notice to terminate it. There was no provision against suicide. Harty killed himself on April 28, 1954: the question of his mental illness was submitted to the jury at trial, and they found him insane. This is not now in issue.

The dispute before us arises out of another policy for which the decedent paid, on April 5, 1954, a larger premium. Plaintiff admitted that a new policy was issued to her husband, effective April 1, 1954, and it is agreed that no termination notice was given under the first policy and that the second policy, unlike the first, had a suicide clause.

There is no doubt that the second policy was different. Its issuance was preceded by correspondence. The Company had had unfavorable loss experience under

the first policy and issued a letter asking the holders of those policies to complete a form, which was enclosed, and return it if they wished "to make a change in . . . present coverage." The deceased did not do this. The Company also sent out a brochure saying that a new application must be completed and returned: he made none. His insurance agency wrote him that unless they heard from him they would assume that he wished "to continue . . . present coverage under the revised form policy . . ." He did nothing but pay the increased premium, which apparently was the result of receiving a bill. There is evidence that he was not informed that the new policy contained a suicide clause.

The insured's beneficiary sued to recover under the first policy and has the jury's verdict.

Defendant's motion for a new trial depends upon the trial judge's statement in his charge that the policy, prepared by the Company, should be construed strictly against it and in favor of the insured. Defendant argues that since the dispositive point is whether or not there was a substitution of one policy for another, there was no part of the policy requiring construction, and that the effect of the instruction might be to tilt the jurors' minds if they were on dead center.

The trouble is set at rest by the following part of the charge: "Now that is if you have any question about the terms and phrases of the policy. You may have no question about it; you can say, well it is clear; there is no doubt as to what it means, but if there is a doubt, then you construe the policy as I have charged you."

Defendant's motion for judgment n.o.v. depends upon the idea of a substitution. This is an affirmative defense: *Clingerman v. Everett Cash Mutual Fire Insurance Co.*, 124 Pa. Superior Ct. 89 (1936); *Schock v.*

*Penn Township Mutual Fire Insurance Association,*
148 Pa. Superior Ct. 81 (1942). In *Moser Manufactur-*
*ing Co. v. Donegal Insurance Company,* 362 Pa. 110
(1949), this Court said: "Where, as here, cancellation
is relied upon as an affirmative defense, the burden is,
on the defendant to prove an effective cancellation of
the policy prior to the loss."

The insurer must show strict compliance with the
cancellation provisions: *Levan v. Pottstown P. Ry. Co.,*
279 Pa. 381 (1924). In *Pomerantz v. Mutual Fire In-*
*surance Co.,* 279 Pa. 497 (1924), this Court said:
"The insurer, to be relieved of liability, must literally
comply with the requirements of this (cancellation)
clause; otherwise the policy will continue and the com-
pany will be bound for any loss occurring thereunder."

The case of *Scheel v. German-American Insurance*
*Co.,* 228 Pa. 44 (1910) is very much in point. The
necessary facts appear in the opinion: "If the insur-
ance company allege as a defense in an action on its
policy that the assured has waived the five days' no-
tice, or that he has replaced the policy by another poli-
cy and thereby relieved the company from liability, it
is incumbent upon the company to aver in its affidavit
of defense and prove on the trial, not only that such
was the intention of the assured but that his intention
was carried out with his consent and by his agreement
with the company. In other words, the mere procure-
ment of another policy on the same property and for
the same amount after the notice and within the five-
day limit does not disclose an intention on the part of
the assured to cancel the earlier policy or to relieve the
company from liability thereon; and in order that it
may have such effect, the company must aver and prove
that the assured consented and agreed to the cancella-
tion and the substitution of the later for the earlier
policy, . ... As the defense rests solely upon the allega-

tion that the policy was cancelled by the substitution of the Hartford company policy for a like sum, the defendant must aver and show, not only that the assured intended to, but did procure from the Hartford Company a policy, substitute it for the defendant's policy, and consent or agree that the substituted policy should take the place of the defendant's policy . . ."

The *Scheel* case distinguishes *Arnfeld & Son v. Guardian Assurance Co.*, 172 Pa. 605 (1896), on which appellant relies. The point of distinction is that in the *Arnfeld* case the substitution of the new policy was by express agreement between all of the parties, whereas in the *Scheel* case, as in the instant case, the intention of the plaintiff must be proved. The trial judge left the decedent's intention to the jury, and their verdict supplies the answer. It could not be declared as a matter of law.

The same idea refutes defendant's argument for novation, express or implied, and distinguishes the cases that it cites. One of the four requisites of a novation listed in *Kritz v. Axler*, 134 Pa. Superior Ct. 120 (1939) is "the extinguishment of the old contract." In *Taylor v. Stanley Co. of America*, 305 Pa. 546 (1932) agreement to substitute a new contract was established by the facts. Cancellation was also by mutual agreement in *Miller v. Travelers Insurance Co.*, 143 Pa. Superior Ct. 270 (1941).

Appellant may not predicate the decedent's consent to a substitution upon his payment of the premium alone. Harty's intention depended upon all of the circumstances: *Taylor v. Stanley Co. of America*, supra (305 Pa. 546 (1932)). Aside from the contents of the correspondence and brochure mentioned above, defendant's agent admitted that Harty was not told about the changes in the new policy that were detrimental to him, although the change was, the witness felt, a small one.

It does not lie well in defendant's mouth to deny that its first policy was in force until May 1st. It sent no sixty-day cancellation. It spoke of "change in present coverage". It required an application form, which later apparently it waived. It offered decedent the option to continue his old policy at an increase in premium. And in its brochure, under the title "Outstanding Features", there appears the statement: "Pays in addition to any other insurance." It is by no means impossible that when he paid the larger premium the decedent thought that he was continuing his policy with the same weekly, hospital, and surgical benefits at an increased premium in accordance with the correspondence. It was peculiarly for the jury to say what was in the gathering dusk of the decedent's mind.

Defendant suggests that a grace period does not contemplate free insurance, citing *Miller v. Travelers Insurance Co.,* supra (143 Pa. Superior Ct. 270 (1941)). The cited case involves a very different situation, one of group insurance where the contracting parties were held to be the employer and the insurer and the individual beneficiaries had merely a certificate. The opinion says: "it is not within the power of the beneficiary to keep a group contract of insurance in force or to abrogate it." Hence the free insurance referred to relates to the period of grace remaining after the employer and insurer had cancelled the prime policy.

The instant case has its close counterpart in *Ozanich v. Metropolitan Life Insurance Co.,* 119 Pa. Superior Ct. 52 (1935) where the question was whether or not the decedent was in his employer's service on the date of his death. He had been laid off in the middle of the month and it was held to be for the jury to say whether the employment continued. The Court, by Judge KELLER, said: "The premium on Ozanich's insurance was paid for the month of December, 1932.

If he died within the grace period of thirty-one days, following January 1, 1933, his beneficiary would still be entitled to be paid.":

The judgment is affirmed.