419 P.2d 347

**NORTHERN INSURANCE COMPANY OF NEW YORK, Appellant,**

v.

**Thomas J. MABRY, Jr., et ux., et al., Appellees.\***

**No. 2 CA–CIV 253.**

Court of Appeals of Arizona.

Oct. 26, 1966.

Jack T. Arnold, Tucson, for appellant.

Chandler, Tullar, Udall & Richmond, by D. B. Udall, Tucson, for appellees.

COLLINS, Superior Court Judge.

This is an appeal from a judgment for $1,551.86 in favor of appellees, Thomas J. Mabry, Jr. and Betty Jane Mabry, husband and wife, against appellant, Northern Insurance Company of New York, a corporation. The cause was tried by the court without a jury.

Sometime prior to September 28, 1960, the Mabrys purchased certain real property known as 5846 South Wilshire Drive, Tucson, Pima County, Arizona, from S. A. Wren and Ruby L. Wren, husband and

---

\* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 8618. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

wife, by taking an assignment of vendee's interest in a contract for the sale of real estate. The Mabrys were the owners of the property, subject to a first realty mortgage thereon, at the date of the fire loss referred to hereinafter.

At the time of said purchase by the Mabrys, there was in force, and relating to said property, a certain fire insurance policy, No. F–108708, with Northern Insurance Company of New York in the amount of $16,000.00. The policy was for the three-year term, December 30, 1959, to December 30, 1962.

At the time of the purchase by the Mabrys, the Northern Insurance Company of New York policy was duly assigned to the Mabrys.

Sometime prior to December 30, 1961, the Mabrys secured from their own insurance agent, Standard Fire Policy No. F–10509353, issued by Mid-Century Insurance Company, the term of the policy being December 30, 1961, to December 30, 1964. At the time of ordering said policy, Mr. Mabry advised his insurance agent that he, Mr. Mabry, would take the necessary action to cause cancellation of the Northern Insurance Company of New York policy. The deposition of Mr. Mabry indicates this was to be done when Mr. Mabry was satisfied that his mortgagee had approved the new policy.

On January 1, 1962, the Mabrys sustained a fire loss at their said residence totalling $3,491.69. Proofs of loss were made to both Northern Insurance Company of New York and Mid-Century Insurance Company, as required by the respective policies. In May 1962, Mid-Century Insurance Company paid to the Mabrys, without reservation, the sum of $1,939.83, that being 20/36ths of the loss incurred. Northern Insurance Company of New York refused to pay Mabrys any part of said loss on the grounds that their policy had been cancelled by substitution upon the issuance of the Mid-Century Insurance Company policy. Mid-Century thereupon advanced to the Mabrys the balance of the loss totalling $1,551.86, that

being 16/36ths of the total loss. The advancement was made in connection with a loan receipt agreement, a copy of which was in evidence and is before this Court.

Northern Insurance Company of New York did not know until sometime after the loss that Mabrys had purchased Mid-Century Insurance Company's policy, and that, subject to the approval of the mortgagee, the Northern Insurance Company of New York policy was to have been cancelled retroactive to Mid-Century Insurance Company's inception date, December 30, 1961, some two days before the loss occurred.

On the foregoing facts, Northern Insurance Company of New York refused to pay any part of the loss and suit was instituted against Northern Insurance Company of New York by the Mabrys for 16/36ths of the loss or $1,551.86. Northern Insurance Company of New York brought Mid-Century Insurance Company into the case as a third party defendant.

■ Both policies involved here are standard fire insurance policies, issued in accordance with A.R.S. § 20–1503, and as such are contracts that may be terminated either by the insured upon request, or by the company upon notice, or by mutual consent of the parties independently of the expressed terms of the policy. See Annot., 3 A.L.R. 3d 1072.

There is no question that the Mabrys procured new insurance with Mid-Century Insurance Company prior to the date of the loss, with the intent that the new policy should take the place of the existing insurance with Northern Insurance Company of New York and with no intent on the part of the Mabrys merely thereby to acquire additional insurance. The question posed is whether such act with such intent worked *ex proprio vigore* an effective cancellation of the Northern Insurance Company of New York policy prior to the date of the loss. Clearly the rights of the parties were fixed at the time of the loss. 45 C.J.S. Insurance § 444b.

Northern Insurance Company of New York has not contended here that there was any formal "cancellation notice" given by either party to the policy prior to the loss nor was there any formal "mutual agreement" of the parties prior to the loss to cancel Northern Insurance Company of New York's policy. Rather, appellant's position, as set forth in its brief, Pages 8 and 9, is simply that there was a "cancellation by substitution" arising out of the unilateral act and intent of the insured, uncommunicated to Northern Insurance Company of New York until after the date of the loss.

In our opinion, such was not sufficient to effect a termination of the Northern Insurance Company of New York policy. A recent annotation of the very question presented here appears in 3 A.L.R.3d 1072 and therein are collected all of the cases on the subject, including the recent case of Glens Falls Insurance Co. v. Founders' Insurance Co., 209 Cal.App.2d 157, 25 Cal. Rptr. 753, 3 A.L.R.3d 1058 (1962). Notwithstanding that a few older cases are to the contrary, a reading of this collation of cases leads but to one conclusion: that cancellation is not effected by substitution alone. Furthermore, though mutual consent to cancel may be expressed or implied from the circumstances and may include the fact of substitution, such presupposes some communication from the insured to the mind of the insurer.

In our opinion, except for the remedial rights of recision not in contention here, an insurance contract can only be cancelled pursuant to its terms or by mutual consent, and "substitution" standing alone does not effect cancellation of the original policy contract.

Two other questions set forth by appellant and relating to "real party in interest" and "estoppel" are of no merit in the deciding of this appeal. In our opinion, the Mabrys were not "paid in full" by Mid-Century Insurance Company. Mid-Century Insurance Company honored and recognized its obligation to pay its pro rata part of the loss to the Mabrys and advanced, by way of a standard "loan receipt", the balance of the loss the Mabrys suffered and which should have been paid forthwith by Northern Insurance Company of New York. Such act on the part of Mid-Century Insurance Company did not make it the real party in interest. Such an arrangement as that between Mid-Century Insurance Company and the Mabrys is a common and accepted way of enabling the insured, who certainly is entitled to be paid by someone, to receive in-hand payment for his loss, pending the determination of the respective liability of the alleged insurers. The courts of this State should look with favor upon such procedures and without prejudice to the company who is willing to advance moneys to the insured during the pendency of litigation such as here. Gillies v. Michigan Millers Mut. Fire Ins. Co., 98 Cal.App.2d 743, 221 P.2d 272 (1950).

The asserted defense of "estoppel" clearly is not applicable in this case, within the definition thereof recognized by our courts. Holmes v. Graves, 83 Ariz. 174, 318 P.2d 354 (1957).

The judgment of the trial court is affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.

NOTE: Judge JOHN F. MOLLOY having requested that he relieved from consideration of this matter, Judge JOHN P. COLLINS was called to sit in his stead and participate in the determination of this decision.