Jacob Markowitz, J.
Plaintiff New Hampshire Insurance Company seeks a judicial declaration that a policy it issued to defendant Cruise Shops, Inc. was canceled and terminated as of a specified date, and that it was replaced by a policy issued by defendant Interstate Fire & Casualty Company.
*61 By stipulation dated March 4, 1971, made in the trial calendar part, it was agreed that Cruise Shops was entitled to the payment of $48,000 by either or both companies, subject to the ultimate determination of the issue of coverage.
The facts are as follows:
An insurance policy presumably covering the loss here in question was issued by New Hampshire on April 23, 1965.
Sometime in September of the same year the insured authorized one John J. Devine of Tyrone Agency, Inc. to make other insurance arrangements. Thereafter, Mr. Devine convinced the insured that he could reduce the deductible under several policies, obtain better rates and also arrange for financing the premiums on the insurance. The policies were to cover the insured’s shop operations on cruise ships. Mr. Devine worked up the package with a local representative of Interstate, who insisted that Interstate receive the full insurance package, covering all aspects of the insurance sought (including the part covered by the New Hampshire policy). November 30, 1965 was agreed upon as the Interstate coverage date.
All existing policies, except the one issued by New Hampshire, were returned by Mr. Devine to the carriers which issued them, for cancellation effective November 30, 1965. The New Hampshire policy was not returned to the carrier, but given to one of the principals of Cruise, who indicated that for some personal reason it would be surrendered directly by one of its representatives. Actually, it was not surrendered at any time.
A fire occurred on the cruise ship Viking Princess on April 8, 1966 causing the loss to the insured. Both companies disclaim coverage — -New Hampshire on the ground that its policy was canceled, Interstate on the ground that the ‘ ‘ other insurance ” provisions of the policy make the prior policy’s liability primary.
The thrust of plaintiff’s argument is that it was Cruise’s intent to replace its policy and substitute it with another and that, by accepted trade usage, the transaction between Cruise and Interstate was tantamount to the cancellation of the New Hampshire policy.
Trade usage is defined as 1 ‘ any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question” (Uniform Commercial Code, § 1-205, subd. [2]). It is a way of determining probable intent, and permits the interpretation of a writing beyond its surface words. On this aspect of the case, plaintiff introduced the testimony of an array of “ experts ” in the *62 insurance field to establish its position that its coverage was superseded by Cruise’s later purchase of insurance from Interstate.
While evidence of trade usage may be used to ' ‘ give particular meaning and to supplement or qualify terms of an agreement” (Uniform Commercial Code, § 1-205, subd. [3]), it is still extrinsic evidence and must first overcome the parol evidence rule. “ Only after the parol evidence rule is satisfied are the actual problems of proof, which usually entail proper qualification of an expert and avoidance of the hearsay rule, encountered.” (Levie, Trade Usage and Custom Under the Common Law and the Uniform Commercial Code, 40 N. Y. U. L. Eev. 1101, 1109).
There are two methods of canceling a policy — unilaterally, by either party, or by mutual consent. Item 14 of the New Hampshire policy provides: “It is hereby understood and agreed that this policy may be cancelled by either party on giving the other (30) thirty days’ written notice ”. Thus, the policy could not unilaterally be canceled, except in writing; and evidence of trade usage could not overcome this express language of the contract.
The issue does not rest here, however. The question still remains, did the parties do anything to effectively cancel the policy issued by plaintiff?
The testimony of the 1 ‘ experts ’ ’ did establish that it was the custom of the trade that in the event of substitution, notice of cancellation is not always given simultaneously with the acquisition of the new policy, but that frequently a short lapse of time is experienced, and that this notwithstanding, the first policy is canceled retroactively as of the substitution date. Since this testimony as to trade usage in no way alters the writing, it is admissible as evidence of trade practice.
It is understandable that clerical delay or other technical impediments might hinder the instantaneous cancellation of the first policy, In such cases a short lapse of time is not unreasonable, especially where some memorandum or other proof may exist to show that a notice of cancellation was in the works. The existence of this trade practice, however, has no application to the case at bar.
Here, the new policy was obtained in November. Absolutely nothing was done to effect cancellation. The first time plaintiff became aware of the other insurance coverage was after a lapse of many months and after the occurrence of a loss.
Early authority held that the procurement of new insurance to commence before the expiration of existing insurance with *63 out an intent to acquire additional insurance constituted a voluntary cancellation by the insured. (See 6 Appleman, Insurance, § 4225; Bache v. Great Lakes Ins. Co., 151 Wash. 494.) Recent decisions, however, reject the view that merely taking out new insurance on property already insured, in and of itself, acts as a cancellation of the prior policy. (See Ann. 3 ALR 3d 1072.)
In Glens Falls Ins. Co. v. Founders’ Ins. Co. (209 Cal. App. 2d 157) an analogous situation existed. There a multi-party action ultimately went to trial only between the two carriers that issued policies covering the same property. The insured, dissatisfied with the first insurer’s treatment of another claim, obtained other insurance with the intent that it replace and not add to the original ’ coverage. In holding that no cancellation occurred, the court in that case stated: 1 ‘ An intention to cancel a policy does not ex proprio vigore cancel it ” (p. 165).
New York State appears to be in accord with this view. In Buss Togs, Inc. v. Fidelity-Phenix Ins. Co. (36 A D 2d 706) it was stated: “ There has been no change in the law of New York since Louisiana Public Utilities Co. v. Atlas Assur. Co. (238 App. Div. 474, affd. 263 N. Y. 595). Therein, this court said (p. 477): ‘ The law is quite clear that a cancellation of insurance is not effective, irrespective of the intention of the insured, until notice thereof is actually received either by the insurer or by his agent authorized to receive and accept such notice. This is the law in our State, the forum of this action. (Crown Point Iron Co. v. Aetna Ins. Co., 127 N. Y. 608; Gately-Haire Co. v. Niagara Fire Ins. Co., 221 N. Y. 162.) ’ ”
In the instant case, the New Hampshire policy could only be canceled pursuant to its terms or by mutual consent and 11 replacement ’ ’ and ‘ ‘ substitution ’ ’ standing alone did not effect its cancellation. The requisite “ communication from the insured to the mind of the insurer ” is absent. (See Northern Ins. Co. of N. Y. v. Mabry, 4 Ariz. App. 217, 219).
Accordingly, plaintiff remains liable under its policy.
As for the extent of its liability, it is contended by Interstate that in view of the clause in the latter’s policy that in case of 11 other insurance the loss shall be collected from the several policies in the order of their attachment”, New Hampshire’s liability is total since its coverage attached first and the stipulated loss did not exceed its policy limits.
The court does not agree with this view. There is no question that the premium paid Interstate was for primary insurance.
*64 “ Overinsurance clauses ” are inserted in the interest of preventing overinsurance, and are devices used to protect insurers from an insured who neglects to state what other insurance he holds. (See 7 Couch, Insurance 2d 742.) Here, Interstate issued its policy with full knowledge, if not by itself, certainly through its authorized agents, of the existence of the prior policy. It insisted that the prior policy he replaced, but took no steps to effect the substitution or to see to it that the insured followed through with its promise to cancel. Where an insurer has notice, express or implied, of the facts as to “ other insurance”, it effects a waiver or creates an estoppel with respect to its own policy (9 Couch, Insurance 2d 45; see Whited v. Germania Fire Ins. Co., 76 N. Y. 415).
In such circumstance justice and equity mandate that the two companies be regarded as coinsurers for the loss and be held liable for the stipulated loss in equal amounts, and it is so found.