CHARLES C. LEE *et al.*, Plaintiffs-Appellants, *v.* OHIO CASUALTY
INSURANCE COMPANY *et al.*, Defendants-Appellees.

Fourth District   No. 14167

Opinion filed February 17, 1978.—Rehearing denied April 3, 1978.

2

TRAPP, J., dissenting.

Manion, Doyle, Janov & Edgar, Ltd., of Hoopeston (Paul T. Manion, of counsel), for appellants.

Hutton, Laury & Hesser, of Danville (Frank L. Schneider and Patricia N. Hale, of counsel), for appellee Harold E. Cox.

Clausen, Miller, Gorman, Caffrey & Witous, P. C., of Chicago, for other appellees.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

The plaintiffs are the owners of premises located on the northeast corner of the intersection of Illinois Route 1 and Penn Street in Hoopeston, Illinois. From 1959 until November 6, 1973, the plaintiffs also owned and were the lessors of a building located on the premises. The plaintiffs' lessees used that building as an I.G.A. food store until the building was consumed in a massive fire which occurred on November 6, 1973. The fire resulted in an estimated loss of $133,000.

At the time of and for a substantial period of time prior to the fire, the plaintiffs carried $150,000 worth of fire insurance on the building through a local broker, Harold E. Cox. Another $28,000 worth of insurance was carried through the National Ben Franklin Insurance Company of Illinois (hereinafter referred to as Ben Franklin). On November 2, 1973, Robert Totheroh issued to the plaintiffs a 30-day, $180,000 fire insurance binder from the Illinois National Insurance Company (hereinafter referred to as Illinois National). Premiums to maintain coverage throughout the period of the fire were paid on all of the policies either prior to or subsequent to November 2, 1973. In their complaint, the plaintiffs stated that they secured the Illinois National policy with the intention of replacing and canceling the above-described, previously existing policies when they

received the Illinois National policy, although the insurers were not notified of this intention prior to the fire.

On December 2, 1974, after unsuccessfully seeking a settlement for over one year, the plaintiffs filed a complaint seeking recovery under all of the above-described policies (Count I). In their answer of January 10, 1975, the defendants essentially alleged that the Illinois National policy issued on November 2, 1973, replaced and was substituted for plaintiffs' earlier policies and that the instant suit had not been filed within 12 months of the loss as required by the policies. On May 22, 1975, plaintiffs filed a four-count amendment to their original complaint seeking: (Count II) interest and attorney's fees for vexatious delay in paying plaintiffs' claim; (Count III) recovery on the theory that the plaintiffs were the third-party beneficiaries of the insurers' agreement to arbitrate losses for which there is overlapping coverage; (Count IV) punitive damages for the insurers' failure to arbitrate; and (Count V) recovery from Harold E. Cox for misrepresenting and securing from the plaintiffs a "Lost Policy Cancellation Release" of the policy issued by General Casualty of Illinois (hereinafter referred to as General Casualty) that was retroactive to November 2, 1973. On February 24, 1976, the plaintiffs filed another amendment to their complaint (Count VI) seeking actual and punitive damages from the insurers for their refusal to deal with the plaintiffs in fairness and good faith.

On November 19, 1975, after Home Insurance Company (hereinafter referred to as Home) and Ben Franklin had settled their pro-rata shares of the loss with the plaintiffs, the court entered an order dismissing these two insurers with prejudice. On December 1, 1975, a similar order was entered with respect to Illinois National. On March 23, 1976, the trial court entered summary judgments in favor of the Ohio Casualty Insurance Company (hereinafter referred to as Ohio Casualty), the Insurance Company of North America (hereinafter referred to as I.N.A.) and General Casualty on Counts I and II. On April 8, 1976, the court entered a summary judgment in favor of the insurance agent, Cox, on Count V. Finally, on October 18, 1976, the court entered summary judgments in favor of Ohio Casualty, I.N.A. and General Casualty on Counts III, IV, and VI.

On appeal, the parties have presented essentially six issues for our review: (1) whether the so-called doctrine of cancellation by replacement and substitution precludes plaintiffs' recovery under the policies; (2) whether plaintiffs' recovery from the insurers is barred by the 12-month limitation contained in the policies; (3) whether plaintiffs have stated a cause of action against the agent, Cox; (4) whether plaintiffs have a cause of action against the insurers for failing to arbitrate the claim as allegedly required by an intercompany compact known as the "Guiding

Principles"; (5) whether plaintiffs have a right to submit questions concerning interest and attorney fees to a jury; and (6) whether plaintiffs have a right to punitive damages from the insurers for their failure to pay plaintiffs and demand arbitration among themselves and to deal with the plaintiffs fairly and in good faith.

In reviewing the question of whether the plaintiffs automatically canceled any coverage by procuring the Illinois National binder, our attention is directed to *Larsen v. Thuringia American Ins. Co.* (1904), 208 Ill. 166, 70 N.E. 31, where an owner of a machine shop on January 19, 1899, purchased from his agent a policy written by the defendant. On February 21, 1899, the defendant insurer notified the agent that the insured would be allowed until "12 o'clock" that day to replace the policy which the insurer intended to cancel. Without first notifying the insured, the agent procured a replacement policy from a second insurer, the North British and Mercantile Company, before the deadline passed. On the morning of February 23, 1899, the machine shop was partially destroyed by fire and the second insurer paid its full share of the loss under the replacement policy. It was only after the fire that the insured was notified of his agent's cancellation and replacement of the original policy. At that time, the insured ratified the replacement by surrendering the original policy, by accepting its replacement and by accepting a settlement thereunder. In affirming a judgment in favor of the insurer, the court stated: "Without the agreement of the appellant to accept the North British and Mercantile Company's policy in lieu of the policy held from appellee, *it may be well doubted if appellee's liability would have been released or affected by anything that had transpired up to that time,* and, also, without the surrender of appellee's policy by appellant as a condition and consideration for the receiving [*sic*] of the policy of the North British and Mercantile Company it may well be doubted if that company could have been held liable for any part of the loss; but it would seem that *when appellant was fully advised as to the transaction and assented thereto, and delivered up his policy in the appellee company and received the policy in the North British and Mercantile Company, and received payment on that policy* according to his agreement with the adjusters, it cannot lie in him now to say that there was no consideration for the surrender of the policy issued by appellee and that appellee is not relieved from liability by that transaction." (Emphasis added.) (208 Ill. 166, 172, 70 N.E. 31.) Thus, it is clear that our supreme court, as long ago as in *Larsen,* did not adopt the so-called doctrine of automatic cancellation by substitution and replacement that is urged upon us by the instant defendants who also allege that the doctrine was firmly established in this State by the *Larsen* opinion.

Rather, the *Larsen* court held that an insured's knowing ratification of

his agent's procurement of additional coverage accompanied by actual surrender of the original policy to the original insurer, by actual receipt of a substitute policy and by payment under the substitute policy worked a cancellation by substitution. The court did not hold that the mere procurement of additional coverage by an insured might somehow work an automatic cancellation of any pre-existing coverage.

■■ In view of the fact that the insureds in the instant case: (1) purchased their Illinois National policy from a new agent (Robert Totheroh); (2) did not surrender their pre-existing policies; (3) did not immediately notify their original agent or original insurers of a desire to cancel the pre-existing policies; and (4) did not intend to cancel the pre-existing policies until placed in possession of the Illinois National policy, we cannot say that a cancellation of the pre-existing policies was effected here. *Cohn v. Mechanics & Traders Insurance Co.* (1912), 175 Ill. App. 594.

Courts which have recently reviewed the so-called doctrine of cancellation by replacement and substitution have often noted that it is now disfavored and have declined to apply it. (*E.g., Franklin v. Carpenter* (1976), ___ Minn. ___, 244 N.W.2d 492; *Harty v. Standard Accident Insurance Co.* (1959), 394 Pa. 358, 147 A.2d 421.) In New York, for instance, an insured's intent to cancel a policy does not effect a cancellation until notice is received by the insurer or its agent. (*Russ Togs, Inc. v. Fidelity-Phenix Insurance Co.* (1971), 36 App. Div. 2d 706, 319 N.Y.S.2d 1; *New Hampshire Insurance Co. v. Cruise Shops, Inc.* (Sup. Ct. 1971), 67 Misc. 2d 60, 323 N.Y.S.2d 352.) Other courts have stated that something greater than intent to cancel is required to actually effect a policy cancellation by substitution (*Northern Insurance Co. v. Mabry* (1966), 4 Ariz. App. 217, 419 P.2d 347; *Ector v. American Liberty Insurance Co.* (1976), 138 Ga. App. 519, 226 S.E.2d 788), and that an automatic, unilateral cancellation of the policy cannot be effected unless it so stipulates. (*Tyner v. Cherokee Insurance Co.* (1974), 262 S.C. 462, 205 S.E.2d 380.) Many other courts have looked for a meeting of the minds through communication and consent before finding a valid cancellation by substitution. (*Glenn Falls Insurance Co. v. Founders Insurance Co.* (1962), 209 Cal. App. 2d 157, 25 Cal. Rptr. 753; *Baysdon v. Nationwide Mutual Fire Insurance Co.* (1963), 259 N.C. 181, 130 S.E.2d 311; see Annot., 3 A.L.R.3d 1072 (1965).) What is clear is that today, in light of inter-company arbitration agreements, the trend of settlements is toward a pro-rata division of liability if overlapping coverage exists. Section 357.18 of the Illinois Insurance Code (Ill. Rev. Stat. 1973, ch. 73, par. 969.18).

■■ We agree with the overwhelming weight of modern authority favoring the rule that a loss should be divided on a *pro-rata* basis where

there is overlapping coverage and where the parties have not agreed to the contrary. We, therefore, decline to enforce the purported doctrine of automatic cancellation by replacement and substitution on which the defendants rely. *Larsen; Cohn; Northern Insurance; Ector.*

■■ In situations where an insurer causes an insured to delay filing suit by holding out a reasonable hope of settlement, the insurer will be estopped from raising a limitations defense because it lulled the insured into a false sense of security. (*Midwest Triangle Paint Works, Inc. v. Firemen's Insurance Co.* (1962), 36 Ill. App. 2d 65, 183 N.E.2d 562.) It is also the rule in this State that the question of estoppel or lulling is a question of fact that is reserved for determination by the trier of fact. (*Cassidy v. Luburich* (1977), 49 Ill. App. 3d 596, 600, 364 N.E.2d 315, 317.) Uncontroverted proof of the insurer's waiver is not required. Rather, an insured need only establish those facts which would render enforcement of the limitation defense unjust, inequitable, or unconscionable. *O'Brien v. Country Mutual Insurance Co.* (1969), 105 Ill. App. 2d 21, 24, 245 N.E.2d 30, 31-32.

In the posture in which the instant case has been presented to us, we cannot state with any certainty that the plaintiffs' failure to prosecute their claim within the policies' 1-year limitation period effectively barred their recovery. The deposition of James Sloan, an insurance adjuster retained by Ohio Casualty, I.N.A., and General Casualty, discloses that he participated in settlement negotiations between the plaintiffs and all insurers in February and May, 1974. While Sloan stated that he had previously told plaintiffs' counsel that his clients denied liability, he still stated that he participated in the negotiations because there was a possibility of litigation. The record reflects that from April to July 1974 all of the parties except Cox corresponded with the Department of Insurance in regard to the plaintiffs' claim. The record does not reflect that the plaintiffs were apprised of the substance of the insurers' correspondence, however, it is clear that Sloan, an agent of the insurers, was participating in negotiations with the insureds at the time. His participation in those negotiations indicates to us that the insurers had not abandoned all hope of settling the claim short of litigation and that Sloan's activity manifested that hope to the plaintiffs. We have also taken note of the plaintiffs' allegation that their original agent, Cox, misrepresented the nature of the "Lost Policy Cancellation Release" which he had the plaintiffs sign. This action, if proved, will adversely reflect on the insurers' good faith in dealing with the plaintiffs.

It appears to us that Ohio Casualty, I.N.A., and General Casualty clearly and unequivocally denied liability for the first time on September 20, 1974, when their attorney, John Morrison, wrote to the plaintiffs. We are aware of the fact that the plaintiffs could have filed a timely complaint

upon receiving Morrison's September 20 letter, but still prior to the first anniversary of the fire on November 6, 1974. After reviewing the record, however, we are not persuaded that the trial court was in possession of all of the facts pertinent to the question of whether the plaintiffs were lulled into a false sense of security.

■■ A moving party's entitlement to a summary judgment must be clear and free from doubt and in ruling on a motion for summary judgment, the pleadings must be construed most strictly against the party so moving. A summary judgment should be awarded with great caution so as to avoid a pre-emption of the right to trial by jury if a material dispute is present. *Donart v. Board of Governors* (1976), 39 Ill. App. 3d 484, 486, 349 N.E.2d 486, 489.

■■ Accordingly, we hold that the question of whether the insurers engaged in conduct sufficient to render enforcement of the limitation defense unjust, inequitable, or unconscionable is a proper question for the jury. We are confident that close analysis of the behavior of Sloan, Cox, or of some other representative of the insurers will disclose at least an arguably factual basis for estopping the insurers from enforcing the policies' 1-year limitation period.

At the same time, we also recognize that the question of agent Cox's liability should be presented to the jury for their decision as to whether his actions inhibited the plaintiffs' ability to recover from General Casualty.

Because the remaining issues appear to be at least partially dependent on the jury's factual determination of the first three issues, we decline to address their merits at this time. It is our judgment, however, that the circuit court's summary judgment orders relating to these questions should also be reversed.

For the foregoing reasons, we reverse the summary judgments entered in favor of the defendants and we remand the cause to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded with directions.

CRAVEN, J., concurs.

Mr. JUSTICE TRAPP, dissenting:

I concur in that portion of the opinion which determines that there was no cancellation of policies by substitution.

The trial court made a specific finding that plaintiffs were fully advised of the denial of liability by these defendants some six weeks or more prior to the expiration of the one year within which suit must be brought, and that there was ample time within which plaintiffs could have filed their action.

The trial court directly relied upon the opinion in *Midwest Triangle Paint Works, Inc. v. Firemen's Insurance Co.* (1962), 36 Ill. App. 2d 65, 183 N.E.2d 562, which determined that there was knowledge of a denial of plaintiffs' claim, some five weeks remaining to commence suit was adequate. That conclusion was not questioned in *Downing v. Wolverine Insurance Co.* (1965), 62 Ill. App. 2d 305, 210 N.E.2d 603, but the *Triangle* case was distinguished because the insured was not advised of the denial of liability until after the expiration of the policy limitations of one year for bringing suit.

Plaintiffs cite *Ciaccio v. North River Insurance Co.* (1974), 17 Ill. App. 3d 940, 308 N.E.2d 860, and *O'Brien v. Country Mutual Insurance Co.* (1969), 105 Ill. App. 2d 21, 245 N.E.2d 30. In O'Brien, the insurance company made an offer of settlement two months after the expiration of the one-year period. The court found a waiver. In *Ciaccio,* the insurer required the insured to give a sworn statement and to produce records which had been destroyed in the fire. The reconstruction of the records from secondary sources required long effort and they were delivered after the expiration of the year limitation. There had been no specific denial of liability. It was held that it was a question of fact whether the insured had been induced to believe that the insurer would settle without litigation. Such opinion does not affect the viability of *Triangle*.

In the light of the finding of the trial court which does not appear to be contradicted in argument, I cannot agree with the conclusion that the trial court was not "in possession of all of the facts pertinent to the question of whether the plaintiffs were lulled into a false sense of security."

I would affirm the trial court upon this issue.