**ALLSTATE INSURANCE COMPANY, Plaintiff/Appellant,**

v.

**FIRST OF GEORGIA INSURANCE COMPANY, Defendant/Appellee.**

Supreme Court of Tennessee, at Knoxville.

June 27, 1988.

James S. MacDonald, Jenkins & Jenkins, Knoxville, for plaintiff/appellant.

Archie R. Carpenter, Carpenter & O'Connor, Knoxville, for defendant/appellee.

## OPINION

COOPER, Justice.

The issue on appeal is whether a Homeowner's policy issued by First of Georgia Insurance Company provided coverage to Lloyd Lawson and his wife, Beulah Lawson, at the time their house was destroyed by fire. If so, the parties concede that Allstate Insurance Company is entitled to recover from First of Georgia one-half of the payment made by Allstate, who had coverage under a binder issued by them before the fire loss.[1] The chancellor found the First of Georgia policy to be in force on March 10, 1985, the date the fire loss oc-

---

1. The limit of coverage against fire loss under the policy and the binder was the same, and the First of Georgia policy provided for payment of "the proportion of the loss that the, limit of liability ... under this policy bears to the total insurance covering the loss."

curred. The Court of Appeals agreed with the trial court's finding that the First of Georgia policy had not been cancelled in either of the two ways set forth in the policy, but found that the "policy was validly cancelled by the agreement of the parties as of the date the Allstate policy became effective," and reversed the judgment of the trial court. On reviewing the record, we have concluded that the evidence does not support the finding of the Court of Appeals, and reverse the judgment of that court.

The James E. Taylor Agency had provided insurance coverage for the Lawsons through one of its listed companies for more than twenty years. In January, 1985, INA informed the Agency that it did not wish to renew the policy it had issued the Lawsons. Thereafter, the Agency placed the insurance with another of its companies, First of Georgia, for a period of one year, beginning February 1, 1985. After the Agency had issued the policy, First of Georgia determined it did not wish to remain on the risk. The Agency was notified of this determination by letter dated February 4, 1985, and was instructed to:

> Please make other arrangements for this risk and return our policy for cancellation. In the event the policy is not returned within the next twenty (20) days, we will assume you have no objections to our releasing a Direct Notice of Cancellation.

On February 20, 1985, the Agency wrote the Lawsons informing them that they had attempted to place (the Lawsons') insurance in one of the Agency's other companies, without success. At about the same time, Mr. Taylor verbally told the Lawsons that they would have coverage under the First of Georgia policy for a time to enable them to get other insurance on their own. The Agency never at any time requested the Lawsons to return the policy issued them.

Later, an employee of the Agency discovered the original First of Georgia policy in the Agency's files. (The policy sent the Lawsons was a copy.) On February 27, 1985, without notice to the Lawsons, or any explanation to First of Georgia, the employee wrote "Cancelled Flat" across the face of the policy and mailed it to First of Georgia. "Cancelled Flat" means the policy was cancelled as of its inception date, February 1, 1985. The employee explained that she marked the policy in this way to keep the Agency from being liable for payment of any premium to First of Georgia.

On February 28, 1985, First of Georgia mailed a "Cancel Notice" to the Lawsons informing them that the "cancellation of [their] policy is effective as of 03/12/85." Also on February 28, 1985, the Lawsons contacted Allstate and were issued a binder of coverage, effective March 1, 1985.

On March 1, 1985, the Agency sent an invoice to Home Federal Savings and Loan Association, the mortgagee who paid property insurance premiums owing by the Lawsons, billing the Lawsons for premium due for the period of February 1, to March 12, 1985.

The Lawsons' home was extensively damaged by fire on March 10, 1985. Mrs. Lawson testified she did not think her home was insured under the binder issued by Allstate, since no policy had issued. Consequently, she reported the fire loss to the James E. Taylor Agency. Mr. Taylor then inquired of her as to whether she had secured a binder of coverage with any other insurance company. On learning that a binder had been issued by Allstate, Mr. Taylor told Mrs. Lawson she had no coverage under the First of Georgia policy and to file her claim with Allstate.

On March 15, 1985, the Agency sent a second statement to Home Federal billing the Lawsons for premium due for the period of February 1 to March 12, 1985. The premium paid by Home Federal subsequently was returned.

■ Unless there is a policy provision to the contrary, there is no unilateral cancellation of coverage merely by an insured's obtaining a second policy, absent notice to the existing carrier or some other indicia of the existing carrier's knowledge of the insured's intent to cancel and acquiescence thereto. *See Milbank Mutual Ins. Co. v.*

*State Farm Fire & Cas. Co.,* S.D. 294 N.W.2d 426 (1980); *Franklin v. Carpenter,* 309 Minn. 419, 244 N.W.2d 492 (1976); *Lee v. Ohio Casualty Ins. Co.,* 58 Ill.App. 3d 1, 15 Ill.Dec. 555, 373 N.E.2d 1027 (1978); *Northern Ins. Co. v. Mabry,* 4 Ariz. App. 217, 419 P.2d 347 (1966); *Anno.* 14 A.L.R. 4th 781 (1982).

As pointed out in *Milbank Mutual Ins. Co. v. State Farm Fire & Cas. Co., supra* at 430,

> The substitution rule appears to have no logical basis within the law of contracts. On a theoretical level, the rule is inconsistent with the generally accepted principle that contracts can only be terminated by agreement of the parties, by the terms of the contract itself, or by operation of law. As a matter of public policy, the substitution rule fails to advance any purpose which might support its adoption … [O]n a practical basis, the rule tends to increase uncertainty as to the very existence of the contract by allowing cancellation to be effected by the subjective intent of the insured and without notice to the insurer.
>
> [Citations deleted.]

While cancellation of a policy can be effected by mutual consent, the actions of First of Georgia and those of the Lawsons indicate to us that there was no mutual understanding that the policy issued by First of Georgia would be cancelled at the moment the Lawsons obtained a binder of coverage with another company. First of Georgia had no knowledge that the Lawsons had obtained other coverage. It sought to effect cancellation of the policy issued by its agent to the Lawsons in the two ways set out in the policy, that is (1) by the insured surrendering the policy, and (2) by direct notice of cancellation. Neither of these methods were effective prior to March 10, 1985, when the fire loss occurred. The policy issued the Lawsons was never surrendered by them or with their knowledge or consent. The cancellation by notice sent by First of Georgia by its terms was not to be effective until March 12, 1985. Furthermore, after the Allstate binder was issued, First of Georgia

billed its agent and the agent billed the Lawsons for payment of the premium due for coverage from February 1, 1985, to March 12, 1985, when the notice of cancellation was to take effect. The record also shows that the Lawsons had no knowledge that the Agency, acting on its own, had returned the original of the Lawson policy to First of Georgia with the request that the policy be cancelled "flat rate," and that they would not have agreed with this action had they known of it, since it left them without coverage during the month of February, 1985. Further, there is evidence that the Lawsons never intended voluntarily to give up any rights they had under the First of Georgia policy until they received a policy—not a binder—from Allstate. After the fire loss occurred, the Lawsons notified First of Georgia and went to Allstate when the Agency advised them that they had no coverage with First of Georgia, but did have coverage under the Allstate binder. These actions in our opinion militate against a finding that the parties mutually agreed to cancel the First of Georgia policy when the Lawsons received a binder of coverage from another company.

Although not mentioned in the Court of Appeals' opinion, First of Georgia also sought to evade liability under its policy on the basis that the Lawsons did not comply with the conditions precedent in the policy of giving "immediate notice" of loss and filing of a sworn proof of loss. In dismissing this defense, the trial court pointed out that the coverage had been denied by the Agency that issued the policy and, therefore, notice and proof of loss were waived and made unnecessary. In our opinion the trial court ruled correctly on the issue. The record shows that Mrs. Lawson notified the Agency of the fire loss immediately and was told that she was without coverage. The record also indicates that James Taylor, the agent, told the adjustor for Allstate that he did not have coverage and would not submit a claim to First of Georgia.

Judgment of the Court of Appeals is reversed and the judgment of the trial court is affirmed. Costs are adjudged

against First of Georgia Insurance Company and its surety.

HARBISON, C.J., and FONES, DROWOTA, and O'BRIEN, JJ., concur.