**Eugene Downing, d/b/a Byron Distributing Company, Plaintiff-Appellee, v. Wolverine Insurance Company, a Corporation, Defendant-Appellant.**

### Gen. No. 65–39.

Second District.

October 1, 1965.

Haye & Keegan, of Rockford (Frederick H. Haye, of counsel), for appellant.

Brown, Connolly, Paddock & Roszkowski, of Rockford (Kenneth F. Ritz, of counsel), for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

This is an appeal from a judgment entered in favor of the plaintiff in the Circuit Court of Winnebago

County in the sum of $5,506.35 and costs. The action was based on a fire insurance policy issued by defendant, insuring merchandise and equipment owned by plaintiff in the operation of a soft drink distributing business. The question for determination is whether, under the circumstances of the case, defendant waived, or was estopped to enforce the provisions of its policy which required plaintiff to file proof of loss within 60 days and file suit within one year in order to recover thereunder.

Plaintiff's amended complaint sets forth the issuance of the policy and the subsequent occurrence of the fire on November 23, 1962; that plaintiff gave immediate notice of the fire to the defendant; that Carter Claims Service, agent of defendant, (herein called Carter) promptly visited the premises; that plaintiff submitted to Carter, within 60 days, a list of items destroyed by the fire valued at $6,241.35; that Carter advised plaintiff that it was not necessary to prepare or file other forms; that about six weeks after the fire, defendant, through Carter, paid plaintiff for loss of two of his trucks damaged by fire, which trucks were insured by defendant under a separate policy; and that in the latter part of January 1963, Carter sold a damaged forklift and truck of plaintiff's, which were covered by the policy in question, for salvage value, to Forest Hills Distributors.

The complaint further stated that defendant, through Carter, offered to settle plaintiff's claim under the policy for $4,577.65, but plaintiff refused such offer and the parties continued to negotiate a settlement; that thereafter, on August 19, 1963, Carter withdrew defendant's prior offer and made a new offer of $4,277.45, which plaintiff likewise refused and the parties continued settlement negotiations; that plaintiff

negotiated with defendant until February 3, 1964, a period in excess of one year after the date of the fire; that on February 4, 1963, defendant, by letter, advised plaintiff that it would not honor his claim in that proof of loss was not filed within 60 days and suit had not been filed within one year as required by the policy; that plaintiff had kept and performed all conditions of the policy, and by reason of the foregoing facts, defendant had waived the requirement of filing proof of loss with it within 60 days of the fire and of bringing suit within one year thereof; and that defendant's refusal to pay plaintiff was vexatious and, therefore, plaintiff was entitled to recover $6,241.35 under the policy, plus attorney's fees and interest.

Defendant filed an answer to the amended complaint, which admitted the issuance of the policy, the occurrence of the fire while the policy was in effect, but denied that plaintiff had complied with the provisions of the policy regarding notice, proof of loss, or the filing of suit. The answer also contained affirmative defenses which asserted that "plaintiff did not, as required by said policy of insurance, within 60 days after the loss, file a proof of loss"; and that "this suit is barred by the provisions of said policy in that it was not commenced within twelve months after the inception of the loss."

Defendant's theory of the case is embraced in its affirmative defenses. The trial judge, however, found, from the evidence, that the defendant had waived, or was estopped from enforcing these provisions of its policy, and entered judgment in the sum of $5,506.35 plus costs, which included neither interest nor attorney's fees. The defendant, on appeal, urges that the findings of the trial court are not supported by the evidence and there was no waiver or estoppel invoked under the facts of this case, and, consequently, the

judgment was erroneous under the law and the evidence.

The evidence established that plaintiff notified Stuart Weller, his broker, of the fire on November 23, 1963,—the day it occurred—and that Weller got in touch with Mr. Carter of Carter Claims Service, who went to Byron about noon that day. The fire was still burning and only a cursory inspection was then made. On December 17, 1962, when plaintiff and Carter met to prepare an inventory of the damaged and destroyed property, plaintiff asked Carter what he had to do to get paid and Carter replied: "Just make up a list and send it to me." Plaintiff made a list of damaged or destroyed equipment and merchandise and submitted this to Carter about February 20, 1963. The list totalled $6,245.35. Carter reviewed the values of some of these articles and submitted two settlement figures which were refused by plaintiff, as alleged in the complaint. The last offer was made by defendant's letter dated August 19, 1963.

The property destroyed by the fire consisted of inventory and equipment. Until defendant denied the claim on February 4, 1964, there never was any question of coverage under the policy—the only dispute being a difference in opinion as to the value of certain items of the equipment. The parties were in agreement as to the value of the merchandise listed in the inventory.

In February of 1963, Carter picked up a damaged forklift covered under the policy and sold it to Forest Hills Distributors. Although Carter later caused Forest Hills Distributors to reissue a check payable to the plaintiff, the original check was made payable to the defendant and was held by Carter until at least December 4, 1963, more than a year from the date of the fire, as disclosed by Plaintiff's Exhibit 4.

Besides the numerous conferences plaintiff had with Carter, Stuart Weller on behalf of plaintiff, also frequently discussed the claim with Carter. Weller dealt with Carter from the date of the fire and for more than a year thereafter; he had negotiations with Carter in September, October and November of 1963. Weller did not learn that defendant intended to deny plaintiff's claim until February 20, 1964.

Mrs. Lucille McMahon, an employee of the Weller Agency, who worked at the claims desk, also had numerous conversations with Carter. She had a telephone conversation with him as late as November 5, 1963, and was advised by him that the claim was still open. Mrs. McMahon made a memorandum concerning this telephone conversation.

Plaintiff's Exhibit 4, a letter from Carter to defendant's claims supervisor in Decatur, dated December 4, 1963, indicates that on or about September 4, 1963, Carter had a telephone conference with J. A. Okerman, an officer of the defendant. This exhibit recites the substance of that conversation, as follows:

"Approximately 60 days ago, I received a telephone call from J. A. Okerman, advising me that I should make no further contact with Eugene Downing who operated the Byron Distributing Company and that I should not discuss the claim with him further as our position in this case would be improved one year after the date of the fire."

In October of 1963, approximately a month after the said telephone conference, plaintiff called Carter to inquire about the status of his claim and Carter then told him that he, Carter, was out of the case; that the file had been turned back to the defendant; and that the plaintiff should now contact defendant's claims supervisor in Decatur.

310

Plaintiff then called the Decatur office and was advised that the party to whom he had been referred was not there. Plaintiff left his name and phone number but his call was not returned. After waiting from three to ten days, plaintiff again called Decatur and was not sure whether he contacted the proper party, but was then referred to defendant's office in Battle Creek, Michigan.

Plaintiff then called Battle Creek for J. A. Okerman, but was advised that he wasn't there. Plaintiff left his name, but his call was not returned. In January or February 1964, plaintiff again called Okerman and talked with him. Plaintiff offered to settle for $5,000, but Okerman would not give him an answer over the telephone. Within a week thereafter, plaintiff received defendant's letter dated February 4, 1964, which denied any and all liability under the policy. This was the first indication to plaintiff, or his insurance broker, that defendant intended to deny liability on the claim.

■■ The law pertaining to the policy limitations in question is not in dispute. Subject to statutory regulations, a party to an insurance policy may contract as to the time when an action on the policy may be brought and as to the giving of notice and the filing of proof of claim. Upon so contracting, the policy provisions ordinarily control, in the absence of waiver or estoppel. Manchester Fire Assur. Co. v. Ellis, 85 Ill App 634, 635, 636 (1st Dist 1898); 22 ILP (Insurance) Sec 525, pp 569, 570.

■ However, rights under a policy provision limiting the time when an action may be brought, or limiting the time within which notice may be given or proof of loss filed, may be lost by waiver or estoppel on the part of the insurer. In 22 ILP (Insurance) Sec 526, p 573, it is stated:

"Since clauses imposing a period of limitation less than that required by the statute of limitations are

strictly construed, they are allowed to be readily waived, and slight circumstances will be held sufficient to constitute a waiver of such stipulations. Thus strong proof is not required of waiver, and the proof is not required to establish facts equivalent to a technical estoppel, but only such facts must be established as would make it unjust, inequitable, or unconscionable to allow the defense to be interposed."

Long ago, Appellate Courts established rules concerning the adequacy of evidence to establish waiver or estoppel of policy provisions. In Covenant Mut. Life Ass'n v. Baughman, et al., 73 Ill App 544, 548, 549 (3rd Dist 1897), it was stated:

"But this condition, like all others intended for the benefit of the insurers, may be waived by them. And as the condition is harsh in its bearing on the insured, and works a forfeiture when upheld, the courts will not require very stringent evidence in order to defeat its operation. A positive act of the company intended to induce postponement is not necessary."

The court there held that the insurance company waived the limitations stipulated in its policy by the conduct of its officers in furnishing blanks to the beneficiaries and by assisting them in their preparation. The court noted that this conduct was not consistent with an insistence upon the limitation provision, and from this, a waiver was inferred.

In Chicago & W. I. R. Co. v. Guaranty Co. of North America, 207 Ill App 483, (1st Dist 1917), the trial court entered judgment upon a directed verdict in favor of the insurance company. On appeal, the judgment was reversed because there was sufficient evidence in the record to raise a question of fact for submission to the jury. At page 489 the Court stated:

312

"If the conduct of appellee (insurance company) actually did induce appellant to think or believe that a settlement might be consummated, and to act accordingly, then there was evidence of a waiver, or pertaining to a waiver, that should have been submitted to the jury."

Midwest Triangle Paint Works, Inc. v. Firemen's Ins. Co., 36 Ill App2d 65, 185 NE2d 562 (1st Dist 1962), is a recent case decided on this point. There plaintiff filed suit against four insurance companies, on separate policies, after the 12 month limitation period prescribed by the policies had expired. The trial court granted summary judgment in favor of all companies. On appeal, the Appellate Court held that summary judgment in favor of three of the companies was proper because plaintiff's vice president and its attorney had received notice of rejection of its claim from five to six weeks before the expiration of the one year limit. The notice of rejection advised the plaintiff that said insurance companies denied any and all liability to it claimed in instruments purporting to be proofs of loss, or in any other amount whatsoever. As to the fourth company, summary judgment in its favor was reversed because there was nothing in the record to clearly show when it sent notice of rejection. At page 70 the court stated:

"An insurance company which, upon rejecting proofs of loss, arranges with the insured to submit new proofs of loss is obligated to notify the insured of its rejection of the new proofs in ample time to enable the insured to comply with the limitation clause on the bringing of suit. This is a reasonable consequence of the waiver of the time limitation for proofs of loss. The record shows that all the defendants except the Reserve Insurance Company notified plaintiff in ample time.

The letter of rejection by defendants, excepting Reserve Insurance Company, was received by plaintiff's attorney on November 19, 1959, and by the vice-president of plaintiff on November 23, 1959. This gave plaintiff approximately five to six weeks in which to commence suit. Commencement of suit was a simple matter, as the complaint finally filed by plaintiff reveals, and the time still available within the limitation period was adequate.

"With respect to the Reserve Insurance Company, however, the matter is quite different. There, the basis for the claim that plaintiff received notice of rejection of loss by Reserve is a conversation in very general terms between plaintiff's attorney and defendants' attorney, during the course of the taking of a deposition. It is not clear when notice was sent by Reserve."

In the case at bar, the defendant insurance company did not notify the plaintiff of denying liability under its policy until February 4, 1964, or after the expiration of the policy limitation of one year. Prior to that time, plaintiff and his insurance agent had frequent conversations with Carter and were advised by him, at all times, that the claim was still open. As late as November 5, 1963, 18 days before the year would expire, Mrs. McMahon, an employee of the Weller Agency, was advised by Carter that the claim was still open.

In October of 1963, a month before the year would expire, the plaintiff talked with Carter about the status of his claim. At this time Carter had already been instructed by Mr. Okerman, defendant's home office representative, not to discuss the claim further with plaintiff in that the defendant's position would be improved one year after the date of the fire. Conse-

quently, Carter then only told plaintiff that he was turning the file back to the defendant and directed the plaintiff to contact the defendant's claims supervisor in Decatur; and he withheld from plaintiff the fact that the insurance company would no longer consider settlement of his claim. After plaintiff talked with the defendant's representative at Decatur, who referred him to the defendant's main office at Battle Creek, and after plaintiff called that office, there was still time within which plaintiff could have filed his claim. However, even though he had been requested to call plaintiff, Mr. Okerman failed to call and advise him that his claim was being rejected. Such information did not come to plaintiff's attention until after he called Mr. Okerman in January or February, at which time plaintiff offered to settle the claim for $5,000. Even then, Mr. Okerman, did not give him an answer over the telephone, but rather advised him that he would write. His answer was contained in defendant's letter to plaintiff dated February 4, 1964, wherein all liability under the policy was denied.

A probable reason for the failure of Carter, the defendant's representatives at the Decatur Branch Office and Home Office at Battle Creek, to contact or discuss such matter with the plaintiff, is revealed in the letter of Carter Claims Service to Tower Insurance, Decatur, Illinois, defendant's Branch office representative, under date of December 4, 1963, which stated:

"Approximately 60 days ago, I received a telephone call from Mr. J. A. Okerman, advising me that I should make no further contact with Eugene Downing who operated the Byron Distributing Co. and that I should not discuss the claim with him further as our position in this case would be improved one year after the date of the fire. You

315

will note that the fire occurred on November 23, 1962, therefore, one year has elapsed and Proof of Loss has not been presented to this office by Mr. Downing, however, I have attempted, previous to that time, to bring this claim to a conclusion and a Proof of Loss has been forwarded to Mr. Downing.

". . . We still have in our file, a check from the Forest Hills Distributors who bought the truck with power lift, and one with hand lift. We had not cashed this check inasmuch as we had not received a Proof of Loss from the assured and, consequently, had not rightfully taken title to this equipment. I believe it would be in order that we now accept this $150.00, however, I will wait for your advice. (No!!) I can contact the Forest Hills Distributors once more. It may be that they would want to issue a new check. In any case, I will wait for your further advice."

█ In view of the circumstances of this case, we believe that the trial court properly found from the evidence that it would be unjust, inequitable and unconscionable to allow defendant to interpose the defenses that suit was not filed within the year or that proof of claim was not made within 60 days.

The evidence, considered in its aspect most favorable to the plaintiff, certainly showed that the conduct of the defendant induced the plaintiff to believe that he need not file formal proof of loss; that a settlement of the loss would be consummated; and that plaintiff could govern his actions accordingly. By such conduct the defendant waived, or was estopped from enforcing such policy provisions. The conduct of the defendant in its negotiations with the insured was not of that degree of fairness or candor required to preclude the application of waiver or estoppel in connection with

316

its limitation provisions relating to the filing of suit or the filing of proof of loss.

The legal philosophy underlying the above applied rule of law is well expressed in Flug v. Craft Mfg. Co., 3 Ill App2d 56, 120 NE2d 666 (1st Dist 1954), at page 68, where it is stated:

> "The law, it is often stated, undertakes to enforce the reasonable expectations which arise out of conduct, relations and situations. Roscoe Pound's Introduction to the Philosophy of Law, p 189; Cardozo's Growth of the Law, p 102."

The reasonable expectations arising out of defendant's conduct, preclude the operation of the defenses it asserted and give rise to waiver of, or estoppel from enforcing the policy provisions upon which defendant's defenses were based.

■■ Defendant further asserts that this judgment is against the manifest weight of the evidence. In order for such contention to be sustained, an opposite conclusion must be clearly evident. Larson v. Fell, 55 Ill App2d 418, 428, 204 NE2d 475 (2nd Dist 1965); Borst v. Langsdale, 8 Ill App2d 88, 93, 130 NE2d 520 (2nd Dist 1955). Such conclusion is not clearly apparent in the case at bar. We find no reason to disturb this judgment and accordingly, it is affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and MORAN, J., concur.