ELLEN CURREN DELANO *et al.* Plaintiffs-Appellants, *v.* HUBERT J. COLLINS, JR., *et al.*, Defendants-Appellees.

Fourth District No. 14073

Opinion filed June 20, 1977.

Charles H. Delano, of Springfield, for appellants.

Graham & Graham, of Springfield, for appellees.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Plaintiffs appeal from an order of the trial court granting summary judgment for defendants upon two counts of a complaint which sought injunctive relief and that portion of a count which sought punitive damages for an alleged diversion of natural drainage.

For purposes of this proceeding, defendant, Collins, owns a parcel of land which parties agree measures 132 feet fronting on Illini Road with a depth of 230 feet. For purposes of this opinion the parcel is designated 1903 Illini Road. It lies within the municipal limits of Leland Grove. The surrounding area is entirely residential in zoning and use, and the particular parcel is zoned as single-family residence. Without specificity, the record shows a sewerage service and a system of storm drains. Defendant, Collins, also owns an improved parcel lying immediately north and having the same east-west dimension as 1903 and known as 1901 Illini Road. Plaintiffs own an improved residential lot, lying immediately south of 1903, which is herein referred to as 1931 Illini Road. Plaintiffs also own an improved residential lot lying west of 1901 Illini Road, herein designated 1965 Outer Park. The latter faces an adjoining street. Thus, the west line of 1903 forms the east line of 1965 Outer Park and the south line of 1903 forms the north line of 1931 Illini Road. Defendant, Kavanagh, is the contract builder of improvements on 1903 Illini Road.

Prior to July 1973, 1903 Illini Road was covered with trees and vegetation. In constructing a residence upon 1903 Illini Road trees and brush were removed, the lot was filled with 116 truckloads of dirt and a home with basement was constructed. As shown on a plat the house had a north-south dimension of some 103 feet and east-west dimension of about 35 feet. Its area is about 10 percent of the area of the lot.

Two counts of the amended complaint seek permanent injunctive relief. Neither the complaint nor plaintiffs' brief clearly delineate a difference in theory for the respective counts. Each count seeks to restrain the diverting of natural drainage from 1901 Illini Road upon the property of plaintiffs, from raising the elevation of the property on 1903, and each, in effect, prays that 1903 Illini Road be returned to its condition prior to July 1973. No temporary injunction was sought and the improvements have been completed so that for practical purposes the court is called upon to order mandatory restoration of the property to its prior state. Plaintiffs did file a *lis pendens* notice contemporaneously with the action for injunction.

Defendants deny the allegation that plaintiffs' land is higher than that of

defendants and deny that the improvement on 1903 Illini Road diverted water from the natural drainage on to the land of the respective plaintiffs.

It is defendant's theory that the natural drainage is from north to south and from east to west. Photographs introduced in the trial court disclose a residential area of a rolling character. Specific data as to the elevations concerning the parcels at 1901 and 1903 Illini Road are in the record. The record indicates that a topographic survey of plaintiffs' land was made but we have not found it in the record.

The parcels of land comprising 1903 and 1931 Illini Road lie west of that street. The parcels east of Illini Road are higher than the west side of 1901 and 1903, the northeast corner of 1903 being 2.8 feet lower than the elevation of the lot east of Illini Road, while the southeast corner of 1903 is 3.3 feet lower than the lot to the east of Illini Road. The northeast corner of 1903 is 6.25 feet higher than its northwest corner, while the southeast corner of that lot, which is a common point with the northwest corner of 1931, is 7.94 feet higher than the southwest corner. This point is also a common corner with 1931 and is also the southeast corner of 1965 Outer Park. Further elevations taken on the east side of 1903 Illini Road show that it ranges from 5.4 feet to 8.5 feet higher than the west line of 1903, which is also the east line of plaintiffs' 1965 Outer Park. The pronounced course of natural drainage from east to west is clearly demonstrated.

The plat elevations also disclose that the north line of 1903 Illini Road is higher than the south line of that lot which is also the north boundary of 1931 Illini Road. The northeast corner of 1903 is approximately one foot higher than the southeast corner. The northwest corner of 1903 Illini Road is approximately 2.5 feet higher than the southwest corner of 1903 Illini Road. This corner forms the southwest corner of 1965 Outer Park and the northeast corner of 1931 Illini Road. Elevations at six stations along the north line of 1903 Illini Road show that such north boundary is from one to 2.7 feet higher than its south boundary.

In sum, the southwest corner of 1903 Illini Road is the natural point of egress for surface water from the lots lying east and north. That corner is common with the northwest corner of 1931 Illini Road and the southeast corner of 1965 Outer Park. That point is 11 feet lower than the east side of Illini Road opposite 1903 Illini Road, and it is 8.8 feet lower than the northeast corner of that lot.

While the record suggests that plaintiffs procured the measuring of elevations concerning their respective parcels, no topographic plat appears in the record and we find no specific evidence concerning elevations of plaintiffs' parcels.

Plaintiffs agree that the elevations or grade at the boundaries of 1903

Illini Road have not been raised or altered by defendants, and it is not contended that the point at which natural drainage leaves defendant's parcel is changed or that additional drainage water has been diverted to such point of egress at the southwest corner of that lot. There is no allegation of fact that plaintiffs have any status as dominant owners in the context of drainage.

It appears to be contended that the change of the conformation inside the boundaries of 1903 Illini Road by filling and the construction of a house causes water to flow to the borders of 1903 Illini Road and thence to the southwest corner of defendant's land, where it stands on the lands of plaintiffs in times of heavy rain. That contention would contradict the allegation of the complaint that plaintiff's lots are higher than those of defendant.

The parties argue the measure of their respective rights in drainage. Section 2—1 of the Illinois Drainage Code provides:

> "Land may be drained in the general course of natural drainage by either open or covered drains. When such a drain is entirely upon the land of the owner constructing the drain, he shall not be liable in damages therefor." (Ill. Rev. Stat. 1975, ch. 42, par. 2—1.)

Section 1—2(h) defines "land" as including "lots." In *Templeton v. Huss* (1974), 57 Ill. 2d 134, 311 N.E.2d 141, the statutory provision is described as a modification of the civil law rule which created liability for any interference with the natural flow of water. Such modification arose in the course of permitting necessary drainage of farmland in the interest of good husbandry.

The facts in *Templeton* introduced a dramatic test of the principles found in prior case law in that a substantial portion of agricultural land was subdivided for the construction of 114 houses with accompanying paved streets and septic tanks so that the surface and subsurface drainage was altered as to the amount and rate of drainage upon servient owners.

Upon review of divers cases it was said in *Templeton* that the prior Illinois cases do not support a conclusion that the dominant owner had an "unlimited right to increase the rate or amount of surface-water runoff flowing onto plaintiff's land, regardless of the cause or extent of the increase." (57 Ill. 2d 134, 141.)

The opinion concluded that under Illinois law:

> "Interference with natural drainage has been limited to that which was incidental to the reasonable development of the dominant estate for agricultural purposes." (57 Ill. 2d 134, 141.)

The opinion continues to state:

> "The question which must be confronted is whether the increased flow of surface waters from the land of the defendants to

that of the plaintiff, * * * was beyond a range consistent with the policy of reasonableness of use which led initially to the good-husbandry exception." 57 Ill. 2d 134, 141.

Both the text of the opinion and the general rules of law would place upon plaintiffs a burden of proof that the acts of the defendants were beyond a range consistent with the policy of reasonable use.

■■ A mandatory injunction is an extraordinary remedy which is not granted as a matter of right but to be used only in cases of great necessity and in the exercise of sound judicial discretion. (*Stavros v. Karkomi* (1975), 28 Ill. App. 3d 996, 329 N.E.2d 563.) Such injunctions are granted in rare cases where sound judicial discretion finds the need for relief is clearly established and free from doubt. *Grillo v. Sidney Wanzer & Sons, Inc.* (1975), 26 Ill. App. 3d 1007, 326 N.E.2d 180.

Plaintiffs' answers to defendants' interrogatories concerning damages claims are nonspecific other than that water stood in the yards when there was intense rainfall. The record shows that plaintiffs have existing underground drains of some description on their respective lots. *Templeton* does not suggest that defendant is required to maintain his lot in an unimproved, unused state for the benefit of plaintiffs.

Upon the issue of summary judgment, plaintiffs urge seven issues of fact to be present. Each is essentially a statement of a theory of law or a conclusion of fact. Upon the record we find no abuse of discretion in denying a mandatory injunction by ordering summary judgment for defendants upon the record in this case.

■■ Plaintiffs urge that the trial court erred in granting summary judgment for defendants upon the claim for punitive damages alleged in the complaint. Such allegation only is that upon the filing of the complaint for injunction and a *lis pendens* notice the defendants committed "wilful and wanton" acts in continuing to construct the improvements. No preliminary injunction was sought during construction.

Section 1 of "An Act concerning constructive notice * * *" (Ill. Rev. Stat. 1975, ch. 22, par. 53) provides that a person acquiring an interest in real estate subsequent to the filing of a notice of pending litigation with the recorder of deeds shall be bound by the proceedings before the court to the same extent as if he was a party to the suit. It does not appear designed to create an additional duty in these defendants. Plaintiffs' briefs urge that the construction of the home, a failure to have plans or specifications or to plan for drainage problems alleged to exist support a claim for punitive damages. No authority is cited to sustain a conclusion that such acts constituted an intentional disregard of a known duty. We distinguish a known duty from duty asserted to exist. The evidence does not show such entire absence of care as exhibits a conscious indifference to the consequences. (*Mower v. Williams* (1949), 402 Ill. 486, 490, 84

N.E.2d 435, 437.) The record shows that defendant made improvements to increase the drainage provided on Illini Road and that the defendants did not alter the elevation or otherwise infringe upon the boundaries of the respective parcels. Whether punitive damages may be awarded in a given case is a question of law. (*Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157.) This record does not show conduct which arises to the level of a tort theory upon which punitive damages should be granted. *Ledingham v. Blue Cross Plan for Hospital Care* (1975), 29 Ill. App. 3d 339, 330 N.E.2d 540, *rev'd on other grounds* (1976), 64 Ill. 2d 338, 356 N.E.2d 75.

The judgment is affirmed.

Affirmed.

CRAVEN, P. J., and MILLS, J., concur.