NEIL C. LYNCH *et al.*, d/b/a Crown Enterprises, Plaintiff-Appellee, *v.* MID-AMERICA FIRE AND MARINE INSURANCE CO., Defendant-Appellant.

Fourth District    No. 16227

Opinion filed February 18, 1981.—Modified on denial of rehearing April 10, 1981.

CRAVEN, J., concurring in part and dissenting in part.

Richard L. James, of Massey, Anderson & Gibson, of Paris, and William F. Meehling, of Meehling & Rich, of Marshall, for appellant.

Harlan Heller, of Harlan Heller, Ltd., of Mattoon, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

On February 21, 1974, plaintiff, Neil C. Lynch and Richard Boes, Jr., d/b/a Crown Enterprises, filed suit in the circuit court of Edgar County against defendant, Mid-America Fire and Marine Insurance Co. The dispute arose from a fire occurring on September 4, 1973, in a building which, together with its contents, was owned by plaintiff and insured by defendant. An amended complaint was filed on November 8, 1976. Count I was brought on the policy for breach of contract and sought payment of the insured's loss plus attorney's fees for unreasonable and vexatious refusal to pay. Count II sought compensatory and punitive damages for defendant's breach of good faith in handling of the claim and refusal to

pay. Defendant's answer denied many of the allegations and alleged affirmative defenses of (1) failure to disclose other insurance, (2) failure to make proof of loss, and (3) arson.

On December 4, 1978, after a jury trial, the court entered judgments on verdicts in favor of plaintiff and against defendant awarding damages as to count I in the sum of $39,314.11 and as to count II for $150,000 compensatory damages and $100,000 punitive damages.

On appeal defendant asserts: (1) no common-law action as alleged in count II exists; (2) all verdicts were contrary to the manifest weight of the evidence; and (3) in the alternative, trial and procedural errors require reversal and remandment as to both counts. We affirm the judgment as to count I. We, (1) affirm the portion of the judgment as to count II finding defendant liable for compensatory damages, (2) reverse the award of $150,000 compensatory damages and remand for a new trial on the question of compensatory damages only, and (3) reverse the award of punitive damages. We discuss only those issues necessary because of our rulings.

The most serious issue in this case is whether, at times pertinent, there existed a common-law tort action in this case whereby insureds could recover, from an insurer on a fire insurance policy, compensatory and punitive damages for the insurer's bad faith in making settlement on the policy when the insurer's conduct was not sufficiently culpable to be outrageous. Count II was based upon an action of this nature. The supreme court has never spoken on this issue and the various districts of the appellate court are not in agreement.

The Illinois genesis for the existence of such a tort was *Ledingham v. Blue Cross Plan* (1975), 29 Ill. App. 3d 339, 330 N.E.2d 540, *rev'd on other grounds* (1976), 64 Ill. 2d 338, 356 N.E.2d 75. There, a husband and wife sued her medical and hospital insurance carriers for their failure to honor claims for such expenses incurred by the wife. After a jury trial, a single $9200 verdict was rendered on count I, charging the defendants with wilful and wanton conduct and requesting actual and punitive damages and count III brought on the contract for the amount of medical and hospital expenses claimed under the policy. The appellate court reversed and remanded, ordering the trial court to enter a judgment for $1592.85, the amount claimed by plaintiffs under the policy. The court explained that the balance of the judgment represented punitive damages which could not be recovered because the evidence showed the carrier's refusal to pay to have resulted from a good faith dispute.

Although holding that the evidence did not support an award beyond the benefits of the policy, the *Ledingham* court explained in detail its theory that the policy gave rise to implied duties upon insurer and insured to deal fairly with each other and that a breach of that duty gave rise to

not only contract but also tort liability for which punitive damages might be awarded in an appropriate case. The opinion cited similar holdings in other jurisdictions including *Gruenberg v. Aetna Insurance Co.* (1973), 9 Cal. 3d 566, 510 P.2d 1032, 108 Cal. Rptr. 480, where bad faith dealing by a fire insurer in settlement of a claim was deemed to be a common law tort. Both *Ledingham* and the cases cited there drew analogy to cases proclaiming the now well established rule that liability insurance carriers may be liable in tort for breach of good faith in dealing with their insureds. See *Krutsinger v. Illinois Casualty Co.* (1957), 10 Ill. 2d 518, 141 N.E.2d 16.

The opinions of other districts of the appellate court refusing to follow *Ledingham* have criticized its failure to consider section 155 of the Insurance Code of 1935 (Ill. Rev. Stat. 1973, ch. 73, par. 767) which then and during the times pertinent in the instant case permitted the court to award to an insured suing on a policy certain costs and attorney's fees if the insurer's conduct had been "vexatious" and "unreasonable." Those opinions deemed the legislation to have preempted any common law remedy for a failure to act in good faith upon the part of the insurer as alleged here. However, they do not deny the existence of such a remedy if the insurer's conduct is outrageous.

The first decision critical of *Ledingham* was *Debolt v. Mutual of Omaha* (1978), 56 Ill. App. 3d 111, 371 N.E.2d 373, arising from the trial court's dismissal of a complaint charging improper conduct upon the part of one insurer in adjusting a claim on a disability income policy. The complaint sought compensatory damages for intentional infliction of emotional distress and punitive damages for breach of good faith dealing. The court held the count seeking punitive damages failed to set forth with specificity conduct constituting the tort claimed and deemed no tort action to exist for the bad faith dealing. It disagreed with the *Ledingham* analogy to actions against liability carriers and set forth the preemption theory.

Next came *Tobolt v. Allstate Insurance Co.* (1979), 75 Ill. App. 3d 57, 393 N.E.2d 1171. There a trial court had dismissed a complaint similar to that in *Debolt* but, as here, arising from a dispute over settlement of claims on a fire insurance policy. The opinion followed the reasoning of *Debolt.* It also noted that effective October 1, 1977, section 155 was amended to provide that in addition to limited costs and attorney's fees, the court might award the lesser of "an amount not to exceed" a percentage of the recovery, $5,000, or the excess of the court award on the policy over the insurer's offer. (Ill. Rev. Stat. 1977, ch. 73, par. 767.) The opinion considered the amendment to give a further indication of prior legislative intent to preempt the field of redress for an insurer's failure to deal in good faith in settlement of claims.

In *Siegal v. Health Care Service Corp.* (1980), 81 Ill. App. 3d 784, 401 N.E.2d 1037, the court recognized the other courts' rejections of *Ledingham* but found it unnecessary to express an opinion as to the validity of their theory of tort liability for lack of good faith dealing because the evidence there did not support such a charge. In *Urfer v. Country Mutual Insurance Co.* (1978), 60 Ill. App. 3d 469, 376 N.E.2d 1073, this court did not create any precedent as to the *Ledingham* theory. Mr. Justice Trapp wrote for the court holding the complaint there to be insufficient to allege with sufficient specificity the breach of good faith dealing and made no decision as to the theory. Mr. Justice Mills concurred agreeing with *Debolt*. His concurrence was cited with approval in *Tobolt*. Mr. Justice Craven dissented, approving *Ledingham*.

Most recently in *Hoffman v. Allstate Insurance Co.* (1980), 85 Ill. App. 3d 631, 407 N.E.2d 156, insureds brought suit against their automobile collision carrier. A count stricken by the trial court claimed compensatory and punitive damages for the insurer's unreasonable delay in paying a claim. The appellate court held the request for punitive damages to have been properly stricken but that a cause of action existed for compensatory damages. It noted the preemption theory expressed in *Debolt, Tobolt* and the *Urfer* concurrence interpreted them as holding that section 155 preempted any claim by an insured for punitive damages and adopted that interpretation. The court then reasoned that nevertheless, section 155 did not, on its face, "preempt a plaintiff's right to claim compensatory damages for a breach of good faith and fair dealing." (85 Ill. App. 3d 631, 635, 407 N.E.2d 156, 159.) The opinion did not indicate that plaintiff's claim for those compensatory damages was being made under section 155. The opinion thus appears to disagree with *Tobolt's* holding that no cause of action exists for compensatory damages for an insurer's failure to deal in good faith with its insured.

■■■ We do not agree with the preemption theory as applied to section 155 as it existed at times pertinent here which were prior to its amendment. Absent statutory authority, a court cannot properly tax attorney's fees as costs and award them to an opposing party. (*Meyer v. Marshall* (1976), 62 Ill. 2d 435, 343 N.E.2d 479.) Section 155 merely granted that authority and stated that the court "may" do it. The fees were limited and even in this case could not have exceeded $1000. The tenor of the section gives no indication that it was intended to cover the field of awarding compensation for bad faith or vexatious dealing by insurers. The *Tobolt* court reasoned that the amendment providing for a limited discretionary cash award evidenced a prior intent to preempt the field. Even if the present section 155 indicates such a present intent, we do not see how that could relate to the prior legislative intent. Where legislation is amended to grant a power expressly, the amendment has been interpreted to indicate a

legislative acknowledgment of a previous lack of that power. (*People ex rel. Scott v. Cardet International, Inc.* (1974), 24 Ill. App. 3d 740, 321 N.E.2d 386.) By analogy to that rule, legislative amendments to add provisions indicating a legislative intent to preempt a field could be deemed to be an acknowledgment that the provisions amended did not previously preempt.

We express no opinion as to whether the present section 155 preempts the field.

■■ Even though the preemption theory be rejected, the question still remains as to whether bad faith but not outrageous conduct by an insurer is a tort. *Ledingham* may have social policy reasons for recognizing such a cause of action. From a more conservative standpoint it may appear to be bad social policy, fostering litigation and giving added exposure to insurers resulting in higher insurance costs to the consumer. In any event, in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, the supreme court cited *Ledingham* for the rule that a separate tort action can arise from conduct that also involves the breach of a contract. We express no opinion as to the effect of the amendment of section 155 but, based upon the supreme court approval of *Ledingham*, we hold that prior to the amendment, there existed a tort action for the refusal of an insurer to make payments due its insured, limited to those circumstances where the refusal was in bad faith. Count II alleged such a cause of action.

We now turn to the evidence presented in support of count II. On September 4, 1973, a fire damaged or destroyed a building owned by plaintiff, known as the Crown Enterprises Building and insured by defendant. Earlier in 1973 plaintiff had formed a partnership. Boes had been in the construction business and contributed all of his assets used in that business. Lynch had been operating a lawn mower and motor repair shop in the Crown Enterprises Building which he had owned. He contributed that property and the assets of that business to the partnership. Those premises were subject to a mortgage to Edgar County Savings & Loan Association which had a principal balance owed of $9,815.88 at the time of the fire. None of the construction equipment was in the burned building but was kept elsewhere. Inventory and supplies for the mower and motor repair shop was in the building and was damaged by the fire. Boes spent all of his time with the construction work and Lynch also spent considerable time with it, leaving the repair business to be done largely by employees.

Defendant was a stock company owned or controlled by Country Mutual Insurance Co. Its policy became effective August 31, 1973, and provided coverage on the building and contents with limits of $20,000 and $50,000 respectively. Charles Dettamore and Joseph Mitchell were agents for the Country Companies, one of which was defendant. On September

5, Mitchell visited the premises and instructed Lynch to get a list of all articles damaged or destroyed and told Lynch to lock up the building. Lynch then locked up the building and later obtained a voluminous list of inventory which was delivered to Mitchell's secretary on October 18 or 19, 1973.

Plaintiff's claim that defendant did not deal with them in good faith in adjusting the loss is based upon evidence that: (1) prior to plaintiff's filing suit, defendant failed to properly communicate with them and refused to tell them, (a) what they needed to do to support their claim, (b) whether their claim was to be paid, and (c) if it was not to be paid, why it was denied; (2) defendant directed Lynch to lock up the damaged building without giving further instructions to plaintiff when it became apparent that the building was being damaged; (3) defendant neither made payments to the mortgagee or offered to do so even though the mortgagee's rights under the mortgage would not be defeated by an arson by plaintiff; (4) an attorney representing defendant filed suit on behalf of the mortgagee to foreclose the mortgage even though plaintiff's default on the mortgage could have been cured if payments had been made by defendant directly to the mortgagee; and (5) defendant made defenses to the suit on the policy which it knew to be unsubstantiated.

The testimony concerning communications between the parties centers on a dispute as to whether plaintiff was given a proof of loss form. The evidence was undisputed that plaintiff had furnished Mitchell with a detailed inventory of the items of personalty purportedly damaged or lost in the fire. A rough handwritten estimate of cost of repairs to the building prepared by Archie Gosnell, Boes' brother-in-law, was also given to Mitchell. Subsequently a conversation took place at a time stated by Mitchell to have been about November 2, 1973. Mitchell testified that he then gave Lynch a proof of loss form with directions that it should be filled out and returned. Mitchell further testified that on November 5, 1973, he received a call from Charles Johnson, a lawyer (not trial counsel) stating that he represented plaintiff and that the documents previously furnished were sufficient and that no formal proof of loss would be made. Mitchell testified that as plaintiff then had counsel, he did not contact them further and that Johnson did not contact him further before filing suit on February 21, 1974. Lynch denied having been furnished the proof of loss forms. No testimony was presented to counter Mitchell's testimony concerning his conversation with Johnson.

The jury could have chosen to believe Lynch rather than Mitchell and conclude that no proof of loss forms were tendered or discussed. Lynch testified that he had great difficulty in contacting Mitchell and that when he did Mitchell would not inform him as to the status of the claim. Boes also testified that he could get no information from defendant's agents.

The jury could also have determined that defendant neither initiated any form of communication to tell plaintiff the status of their claim nor to tell them of what they need do to support their claim.

A member of the firm of defense counsel, now deceased, represented the defendant at the pleading stages in defense of this claim. He also represented the mortgagee in the proceedings to foreclose the mortgage. The situation here was not the same as when the counsel for a liability carrier designated to represent an insured has an interest adverse to the insured. (See *DeGraw v. State Security Insurance Co.* (1976), 40 Ill. App. 3d 26, 351 N.E.2d 302; *Cowan v. Insurance Co. of North America* (1974), 22 Ill. App. 3d 883, 318 N.E.2d 315.) There, the counsel has a fiduciary relationship with the insured. Here he does not. No duty to plaintiff was necessarily breached merely because defense counsel took on the representation of the mortgagee. However, as the defendant would have been required to make payment to the mortgagee on the policy to the extent of the mortgagee's interest in the proceeds regardless of whether plaintiffs were guilty of arson, defendant could have attempted to work out an agreement with the mortgagee to forestall the foreclosure. If this had been successfully worked out, defendant's interests could have been better protected had the, at best, uncertain arson defense failed. Although the foregoing problem was not readily apparent, defendant's conduct in regard to the position of the mortgagee had further probative value in indicating lack of good-faith dealing on defendant's part.

We see no impropriety in Mitchell's directive to Lynch to lock up the damaged building. However, defendant's knowledge of vandalism taking place in the building added to the urgency in expediting the claim.

The evidence showed that both the Paris fire chief and an assistant State fire marshal had indicated to defendant their belief that the fire was purposefully set. Under the totality of evidence presented the jury could not properly have found that the use of that defense was bad faith. On the other hand, defendant also interposed the defense that the plaintiff had other existing insurance at the time of the fire. Evidence was presented that a prior policy covering the premises had been terminated just prior to the issuance of the policy in suit. The trial court struck this defense at the close of the evidence. The use by defendant of this defense bore upon its good faith.

Viewing the evidence most favorably to plaintiff, defendant's conduct could properly have been found to constitute bad faith. The jury's finding to that effect, inherent in its verdict, was not contrary to the manifest weight of the evidence.

■■ The award of $150,000 in compensatory damages on count II was contrary to the manifest weight of the evidence. These damages would be those that would not have occurred if defendant had paid for the loss in a

reasonable time. It was plaintiff's theory that both the mower and motor repair and contracting business were destroyed because plaintiff's lost cash flow which they would have had if timely payment had been made on the policy. No evidence was presented as to the earning from the repair shop. However, Lynch had bought out his partner in the year before the fire for $1,000 and testified to having put $30,000 in the business. Some of this would be covered by the recovery for the damaged and lost inventory. The contracting business continued for awhile but then folded. Boes admitted that this was partly the result of the change in the economy and the shortage of gasoline. In 1972 when Boes ran the construction business by himself he had a taxable income of $7,485.96. Apparently an auction of the construction equipment was held. Without objection, Boes testified that the auctioneer told him that the equipment which sold for a total of less than $10,000 was worth $50,000 to $60,000. Only the admissibility and not the inherent weakness of hearsay evidence is waived by the failure to object to its admission. (See *Looby v. Buck* (1959), 20 Ill. App. 2d 156, 155 N.E.2d 641; *People v. McCoy* (1970), 44 Ill. 2d 458, 256 N.E.2d 449.) Other evidence was presented of plaintiff selling other personal assets but no figures were presented to show losses on those sales. Plaintiff was admittedly in a fairly close cash position at the time of the fire and had learned on the very day of the fire that they had a $10,000 accrual of tax liability. The damage award as to count II must be set aside.

We likewise conclude that the punitive damage award must be reversed. No case has been called to our attention holding that evidence supporting an award of compensatory damages for an insurer's failure to settle the claim in good faith necessarily supports an award for punitive damages. Here the tort of defendant was largely one of omission rather than commission. Except for the use of the "other insurance" defense none of the evidence of misconduct taken most favorably to the plaintiff bordered on fraud or even misrepresentation.

■■ We deal more summarily with other issues. The proof of count I supported the verdict. Plaintiff filed no proof of loss but where, as here, the insurer knows of the loss and sufficient information is submitted to the insurer to inform it of the nature and extent of the loss the requirement may be deemed waived. (*First National Bank v. Boston Insurance Co.* (1958), 17 Ill. App. 2d 159, 149 N.E.2d 420.) The jury could also have determined that defendant's agents had various discussions with plaintiff about the claim without mentioning the need to file proof of loss and thereby led plaintiff to believe that no formal filing of proof of loss was necessary. (*Downing v. Wolverine Insurance Co.* (1965), 62 Ill. App. 2d 305, 210 N.E.2d 603.) The amount of the verdict for $39,314.11 was supported by (1) Lynch's testimony that the value of the contents of the

building damaged or destroyed was $39,600, and (2) Gosnell's testimony that the cost to repair the building was $17,244.33. Even after considering that several thousand dollars of contents was salvaged, the verdict was still within the range of the evidence.

Defendant's parent, Country Mutual Insurance Company, was and is an affiliate of the "Farm Bureau" of this state. Upon plaintiff's motion and over defense objection, the trial court excused for cause all Country Mutual Insurance Company insureds and members of the "Farm Bureau" from the jury. The court's reasoning for the ruling was based upon the decision in *Rains v. Schutte* (1964), 53 Ill. App. 2d 214, 202 N.E.2d 660, where an insured under a Country Mutual Insurance Company liability policy was defendant in a negligence case. The court held error to have occurred when the trial court refused to either (1) excuse all of those veniremen on a list of Country Mutual policyholders, or (2) permit plaintiff to interrogate jurors as to their relationship to Country Mutual and as to whether it would influence them. There, to permit the interrogation would have given the jurors knowledge of the insurance company's ultimate responsibility to pay any judgment rendered. Here, that knowledge was pertinent and the jurors could properly have been questioned as to any prejudice or bias they might have had. Defendant argues that for this reason, it was error to excuse for cause the policyholders and "Farm Bureau" members. Although a preferable method of selection would have been to permit the interrogation, we find no reversible error to have occurred. Defendant cites no case where reversal was granted for excusing for cause jurors having a remote interest in litigation without requiring a show that they thought they would be prejudiced.

■■ No evidentiary ruling required reversal. The trial court refused an offer of proof that a polygraph test was given to Boes and the examiner's opinion was that he showed deception when he denied setting the fire or knowing who did. The parties do not dispute that the evidence would have been inadmissible for purposes of showing that Boes was guilty of arson. There is authority for its admissibility if limited to proof of defendant's good faith in refusing to pay. (*Moskos v. National Ben Franklin Insurance Co.* (1978), 60 Ill. App. 3d 130, 376 N.E.2d 388.) As the evidence would have been likely to have been improperly considered by the jury as to the arson policy defense despite any limiting instruction, the trial court did not err in balancing the prejudice against the probative value and denying admission.

■■ The trial court permitted impeachment of Mitchell by showing his answers to be contrary to answers to interrogatories given by defendant. As Mitchell did not answer the interrogatories, this was not impeachment by a prior inconsistent statement. (*McNealy v. Illinois Central R.R. Co.* (1963), 43 Ill. App. 2d 460, 193 N.E.2d 879.) But it was not error to show

that Mitchell's testimony was contrary to a statement of fact claimed to be true by defendant. There was also no error in admitting conversation between defendant's attorney and the mortgagee. As we have indicated, the manner in which defendant dealt with the mortgagee bore upon its good faith.

■■ Finally the trial court did not err in denying defendant's request for severance made on the last day of trial nor in instructing the jury on proof of loss. The theory of defendant's request for severance was so that the claim on the policy could be severed from the tort claim so that the polygraph evidence could be admitted. However, the denial of a motion to sever made on date of trial has been deemed to be untimely. (See *Logue v. Williams* (1969), 111 Ill. App. 2d 327, 250 N.E.2d 159.) To sever after most of the proof was in would cause many more problems. The jury was instructed that proof of loss could have been waived. Defendant maintains that only the time limitation on proof of loss (here 60 days) can be waived and not the requirement that such a proof be filed at some time. It cites *Haun v. Cherokee Insurance Co.* (1978), __ Tenn. App. __, in support of its contention. However, in *Downing v. Wolverine Insurance Co.* (1965), 62 Ill. App. 2d 305, 210 N.E.2d 603, the filing of any formal proof of loss was held to have been waived.

Our (1) affirmance of the judgment on count I, (2) affirmance of the judgment of liability on count II, (3) reversal of the award of compensatory and punitive damages as to count II, and (4) remandment for retrial on issues of compensatory damages as to count II are ordered for the reasons stated.

Affirmed in part; reversed in part; and remanded.

WEBBER, J., concurs.

Mr. JUSTICE CRAVEN, concurring in part, dissenting in part:

Although I initially agreed with the majority, the plaintiff's petition for rehearing has convinced me of one error in the decision: This court should not reverse the jury's determination that the defendant's conduct justifies an award of punitive damages, for that determination is not against the manifest weight of the evidence. (*Lawson v. G. D. Searle & Co.* (1976), 64 Ill. 2d 543, 356 N.E.2d 779.) The evidence on this issue is close, and for that reason we should defer to the jury.

Punitive damages are intended to punish the defendant and to deter him and others from engaging in similar conduct in the future. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353; *Mattyasovsky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 330 N.E.2d 509.) They are

recoverable when the underlying tort is "committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." (*Kelsay*, 74 Ill. 2d 172, 186, 384 N.E.2d 353, 359.) To be sure, punitive damages are not favored by the courts. (*Glass v. Burkett* (1978), 64 Ill. App. 3d 676, 381 N.E.2d 821.) Punitive damages are not available when the improper act does not rise above the level of mere negligence (*Galayda v. Penman* (1980), 80 Ill. App. 3d 423, 399 N.E.2d 656), and I agree that they do not follow by necessity from every award of actual damages in cases involving reckless or intentional torts. (*Crumble v. Blumthal* (7th Cir. 1977), 549 F.2d 462.) In *O'Brien v. State Street Bank & Trust Co.* (1980), 82 Ill. App. 3d 83, 87, 401 N.E.2d 1356, 1359, this court said that "punitive damages should not be awarded if the defendant's misconduct is not above and beyond the conduct needed for the basis of the action." Some intentional torts are defined in terms of outrageous conduct, with the minimum required to state a cause of action under the tort so high that, once the elements of the action are there, no room remains for conduct that exceeds, that is more wanton and malicious, than that which defines the underlying tort. Thus in *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 88, 174 N.E.2d 157, 165, in recognizing the tort of intentional infliction of emotional distress, the court said:

> "We believe, nevertheless, that punitive damages cannot be sanctioned as an additional recovery in such an action. Since the outrageous quality of the defendant's conduct forms the basis of the action, the rendition of compensatory damages will be sufficiently punitive."

I do not believe that the tort involved here is similarly insusceptible to punitive damages. Whether punitive damages may be recovered in a particular case is a question of law for the trial judge to decide; the proper amount of punitives is a factual question entrusted to the trier of fact. (*Delano v. Collins* (1977), 49 Ill. App. 3d 791, 364 N.E.2d 716.) These decisions should be reversed only when an abuse of discretion has been shown. *Shaw v. Miller* (1978), 64 Ill. App. 3d 743, 381 N.E.2d 985; *Glass*.

The facts in this case are quite different from those in *Ledingham v. Blue Cross Plan* (1975), 29 Ill. App. 3d 339, 330 N.E.2d 540, *rev'd on other grounds* (1976), 64 Ill. 2d 338, 356 N.E.2d 75, discussed by the majority. Although recognizing that parties to an insurance contract are obligated to deal with each other in good faith, the appellate court in *Ledingham* reversed an award of punitive damages; there, the health insurance became effective August 1, 1969, and the illness manifested itself two days later. The insurer denied the claim for medical bills, arguing that the illness was preexisting and thus excluded by a provision to that effect in the policy. The insurer based its opinion, reached in good faith, on a

statement by the insured's doctor that he "could not be certain whether the condition was preexisting on August 1, 1969, or not." (29 Ill. App. 3d 339, 342, 330 N.E.2d 540, 542.) Considering the evidence on the course of the insurer's dealings, the appellate court expressly noted that the insurer neither had accused the insured of misrepresentation nor had interposed defenses known to be false to pressure the insured into settling the claim. 29 Ill. App. 3d 339, 351, 330 N.E.2d 540, 549.

In this case, however, we have evidence that the defendant relied on at least one defense it knew to be false, that concerning other insurance, and instructed Lynch and Boes to close their business. Furthermore, the majority concede that the jury could have believed that the defendant did not provide Lynch and Boes with proof-of-loss forms, that defense counsel's participation in the foreclosure of the mortgage on the property, when the insurance policy would have protected the mortgagee's interest regardless of the fire's cause, indicates bad faith on the insurer's part, and that use of the other-insurance defense by the insurer pertained to the nature of its dealings. The majority even conclude that a cause of action was stated for this tort and that the jury's implicit finding of bad faith was not against the manifest weight of the evidence, yet inexplicably reverse the award of punitive damages. Here a jury and an able and experienced trial judge concluded that the defendant's conduct was such as to warrant punitive damages. We cannot say that such determination is wrong or contrary to law.

I join the majority in remanding on the issues of actual damages. Punitive damages may be awarded only in conjunction with actual or nominal damages and may not be awarded alone. Thus, if we were reversing the award of actual damages without remanding too, then the award of punitives would also have to be reversed. (*Tonchen v. All-Steel Equipment, Inc.* (1973), 13 Ill. App. 3d 454, 300 N.E.2d 616.) Here, however, because we are merely remanding the case for a recalculation of the actual loss, I would let the award of punitives stand.